## HUDSON v. DAILY.

1. The action of the primary court, in quashing, or refusing to quash, an attachment sued out as ancillary to the writ, cannot be inquired into upon a writ of error to the judgment. *Mandamus* is the proper remedy.

2. When the judgment of another State, is by the terms of the judgment, to

carry interest at a given rate, from a specified time, the interest may be recovered in this State, without showing that by the statute law of the State in which the judgment was rendered, judgments carry interest.

3. A certificate designed to certify a record of another State, which recites, "I, A. K., *first* justice of the county court of M., in the State of Virginia, do hereby certify," &c. is not sufficient under the act of Congress, at least without proof, that by the law of that State, the *first*, or oldest justice of the court, was the chief justice, or presiding magistrate.

Writ of Error to the County Court of Marengo.

DAILY, sued Hudson in debt, and an ancillary attachment was issued, and returned. The defendant filed two pleas in abatement of the ancillary attachment—one that the plaintiff was a resident citizen of Virginia, the other, that no suit was commenced before the issuance of the attachment. To those pleas in abatement, there was a demurrer, which was sustained. The defendant then pleaded to the declaration, *ne unques executor;* a verdict and judgment was rendered for the plaintiff below. On the trial, a bill of exceptions was taken, which presents the following facts: The plaintiff offered in evidence, the transcript of a judgment as described in the declaration, in the following words: Therefore, it is considered by the court, that the plaintiff recover of the defendant the sum of $796 69, with interest thereon, to be computed at the rate of six per cent. from the 24th February, 1843, until paid. The plaintiff then offered in evidence, a transcript purporting to be the interest, or usury laws of Virginia, which is in the following language: "Be it enacted, &c. that no person shall, upon any contract, take directly, or indirectly, for the loan of any moneys, wares or merchandise, or other commodity, above the value of six dollars, for the forbearance of $100, for a year, and all bonds, covenants, contracts, assurances and conveyances, for the payment or delivery of money or goods to be lent, on which a higher rate of interest is reserved, or taken, than is hereby allowed, shall be void, and after that rate, for a greater or lesser sum, or for a longer or shorter period."

The defendant objected to this proof, on the ground that it was no evidence, that judgments bore interest in Virginia;

which objection was overruled, and the defendant excepted. In proof, that the plaintiff was executor of Samuel Daily, deceased, he introduced the transcript of letters testamentary, granted to him by the county court of Mecklenburg county, in the State of Virginia, which letters were certified by the clerk of said court. The certificate of the judge, or justice, is as follows: "I, Abram Keen, first justice of the county court of Mecklenburg, in the State of Virginia, do hereby certify, that Richard B. Baptiste, whose signature appears to the foregoing certificate, is, and was, clerk of our county court, at the time of signing the same, and that his certificate is in due form of law, and full faith and credit should be given to his acts as such clerk. Given under my hand and seal.

Signed, ABRAM KEEN, [seal.]"

The letters testamentary, and the certificate thereto attached, had been duly recorded in the county court of Sumter county, in this State. The defendant objected to the reading of the letters testamentary, because it does not appear from the certificate of the justice, that he was either judge, chief justice, or presiding magistrate of said court. 2. Because it did not appear, that by law, said court had authority to grant letters testamentary. These objections were overruled.

The defendant requested the court to charge the jury, that the plaintiff was not entitled to recover interest on the cause of action, without proof, that by the laws of Virginia, judgments bore interest; and that the copy of the interest act, was no evidence of the fact. This request the court refused. The defendant also requested the court to charge, that the evidence was insufficient to show, that the plaintiff was executor, which the court refused, and charged, that the act produced and read was evidence that judgments bore six per cent. interest by the laws of Virginia. To all which the defendant excepted, and now assigns for error, the sustaining the demurrer to the pleas in abatement to the ancillary attachment, and the matters growing out of the bill of exceptions.

BROOKS, for the plaintiff in error.

1. The demurrer to the pleas in abatement ought not to have been sustained.

2. A non-resident plaintiff cannot sue out an attachment against a resident citizen.   Clay's Dig. 54, 57.

3. The plaintiff below had no authority to sue out an ancillary attachment.   Clay's Dig. 61.

4. The copy of the interest act of Virginia is no evidence that judgments bear interest in Virginia.

5. The record of the appointment of the plaintiff executor was not properly authenticated.

HENLEY, contra.

1. The statute is general in its terms, that whenever a suit shall be commenced, &c. the plaintiff may take out his attachment ancillary to the suit at law.   Whoever then may sue, may take the benefit of the attachment.   There is no exception, and the statute being remedial, is to be liberally construed.   Executors and administrators appointed in other States, are authorised by our statutes to maintain any action which an executor appointed here could maintain.   Clay's Dig. 227, § 31.

2. The certificate and seal which give verity to a record, (unless the record itself discloses the want of jurisdiction,) establish as well the right of the court to adjudicate the matter contained therein, as that such facts were adjudicated. That a decree admitting a will to record is a final decree, &c. see Boyett, et al. v. Kerr, 7 Ala. Rep. 9.

3. As to the authentication of the record, the act of Congress is not to be literally pursued.   A substantial compliance is all that is required.   Vide Huff v. Campbell, 1 Stew. Rep. 543.   The expression "first justice" is certainly equivalent to that of "chief justice."   First means pre-eminence of rank or station, giving the right to preside.

4. The right to recover interest is shown in, and forms a part of the judgment entry as much as the principal sum.   1 Rev. Code of Va. 508.   But independent of this, the right to interest is fully shown by the law read in evidence.   It shows what was the legal interest of Virginia, if it shows any thing.   But even without the production of any law, interest on judgments is recoverable at common law.   Craw-

ford v. Simonton's Ex'rs, 7 Porter, 110; Murray v. Cone, 8 Porter, 250.

DARGAN, J.—The action of the court below, on the an-cillary attachment, cannot be reviewed in this court by writ of error.  The capias is the process, on which the judgment is rendered.  The ancillary attachment is intended to secure the property, or fund, out of which this judgment is to be sat-isfied; and although the court may err in its action on the ancillary attachment, yet there may be no error in the judg-ment.  The writ of error is intended to review the judg-ment, and is brought for the purpose of reversing it; and if the court below should improperly quash an attachment, is-sued as ancillary to the writ, after the judgment was ren-dered for the plaintiff, in which there is no error, could he bring up the cause, and ask to have it reversed?  The only mode by which the action of the court below, on an ancillary attachment, can be reviewed, is by a *mandamus*.  This is the practice heretofore pursued by this court.

2.  We are relieved from considering the question, whether the court erred in construing the interest act of Virginia.  The judgment, by its own express terms, is to bear interest at six per cent. until paid, and the recovery of interest, is as much a part of the judgment, as any part of the principal.  This renders it unnecessary to examine this charge, for whether right or wrong, the plaintiff in error could not have been in-jured by it.

But we come to the conclusion, that the court erred in per-mitting the record of the letters testamentary, granted to the defendant in error by the county court of Mecklenburg, to go to the jury as evidence.  The certificate under which the plaintiff below offered the record of his letters testamentary, is in the following words:

"I, Abram Keen, *first* justice of the county court of Meck-lenburg, in the State of Virginia, do hereby certify, that Rich-ard Baptiste, whose signature appears to the foregoing certi-ficate, is, and was clerk of our county court, at the date thereof; and that it is in due form of law, and full faith and credit should be given to his acts, as clerk.  Given under my hand and seal.                     ABRAM KEEN, [seal.]"

Hudson v. Daily.

The act of Congress of May, 1790, provides, that the records and judicial proceedings of the courts of any State, shall be proved, or admitted, in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be one, together with the certificate of the *judge*, chief justice, or presiding magistrate, that the attestation of the clerk is in due form.

The language in this certificate is, "I, Abram Keen, *first* justice," &c. We do not think this certificate is in conformity with the requisitions of the act alluded to. The language of the act, is judge, chief justice, or presiding magistrate. We do not wish to be understood as laying down the rule, that the certificate of the judge must use the precise words of the statute; but when there is a departure from the statute, in the language of the certificate, the words, or language adopted, must not be equivocal, or capable of conveying any other idea than that of judge, chief justice, or presiding magistrate. Here, the term *first* justice, is used. Is he the presiding magistrate, or chief justice? or is he the *first* that was commissioned? or is it meant that his commission is older than either of the other justices? His commission may be the oldest, and yet it would not follow, from this, that he would be the chief justice, or the presiding magistrate, unless by statute the date of his commission would give him this position. But the bill of exceptions does not show, what the statute law of Virginia is, on this subject, or whether there is any. As the term used in the certificate may imply a different meaning than the terms chief justice, judge, or presiding magistrate, the certificate does not conform to the act of Congress, and therefore the judgment is reversed, and the cause remanded.