# WARD *vs.* THE STATE.

[INDICTMENT FOR ASSAULT AND BATTERY.]

1. *Sufficiency of clerk's certificate to transcript on change of venue.*—On change of venue in a criminal case, it is not necessary that each paper, order, &c., found in the transcript, should be mentioned and verified by name in the clerk's certificate. If his certificate states " that the foregoing pages contain a full, true, and complete transcript of the indictment and all papers on file in his office, and of all the entries relating to the case, as found in his office," it is a substantial compliance with the statute (Code, § 3613), and the presu uption of law is in favor of the correctness of the proceedings.

2. *Variance between averment and proof as to name of person assaulted.*—A variance between the averment of the indictment and the proof, as to the name of the person assaulted, is immaterial, where the names may be sounded alike without doing any violence to the letters found in the variant orthography; as in the names *Chambless* and *Chambles.*

3. *Admissibility of evidence in extenuation of assault.*—Evidence showing that the person assaulted " was a lazy vagabond, who would not work if he could help it ; that money could not be made out of him by legal process ; that he had been indebted to the defendant a long time, and would not pay ; and that defendant, on the morning of the day on which (in the evening) the assault was committed, had offered him ten dollars per hour if he would work for him in payment of said indebtedness, and he had refused to do it,"

is not admissible for the defendant in mitigation or extenuation of the assault.

4. *Mode of impeaching witness.*—In impeaching a witness, the inquiry is not limited to his general character for truth, but the impeaching witness may be asked as to his general character ; Stone, J., *dissenting.*

5. *Competency of impeaching witness.*—A witness who states that he is acquainted with the general character of the impeached witness, although he may never have heard it canvassed, is competent to testify in reference to it.

FROM the Circuit Court of Perry.

Tried before the Hon. GEO. D. SHORTRIDGE.

·INDICTMENT against Jefferson Ward, for.an assault·and battery on one Henry *Chambles*, found at the Fall term, 1853, of the circuit court of Autauga, and removed, on the defendant's application, at the Spring term, 1855, to Perry county. The certificate of the clerk of the court in which the indictment was found, appended to the transcript sent to the court in which the trial was had, is as follows :

     "The State of Alabama,       I, John R. McBryde, clerk of         Autauga County.      the circuit court of said county, do hereby certify, that the foregoing contains a full, true, and complete transcript of the indictment and all papers on file in my office, and of all the entries relating to the case of the State against Jefferson Ward, as found in my office. In testimony whereof, I hereunto set my hand and official seal," &c.

     " On the trial," as the bill of exceptions states, " the State having announced itself ready for trial, the defendant objected to going to trial on·the transcript sent to the court and exhibited as the transcript upon which he was to be tried, and stated to the court, as the grounds (among others) of his objection, that it did not show that .the statements contained therein, in reference to the empaneling of the grand jury therein mentioned, set forth the proceedings of the ·circuit court of Autauga; and, secondly, that the certificate of the clerk of said circuit court of Autauga was not such as required by the Code. The court overruled the objection, and ruled that the transcript was sufficient to put the defendant on his trial; and the defendant excepted. The defendant then interposed the plea of not guilty, and the trial proceeded.

     " One Henry Chambless was then introduced as a witness in behalf of the State, and proved that an assault and battery

was committed on him by the defendant, who stripped and whipped him with a switch. This witness stated, on cross-examination, that his name was Henry Chambless, and that, in spelling it, he doubled the letter s at the end; and witness pronounced his name as it was usually called, showing that both syllables were emphasized about equally. No evidence was offered, showing that his name was ever spelled as shown in the indictment, or that the name as spelled in the indictment was ever pronounced as said witness pronounced his name. Said witness further testified, on cross-examination, that defendant said, immediately after he had whipped him with a switch, that *that* was nothing to what he would give him if he did not pay him what he owed him. Defendant then proposed to prove by said witness, in mitigation, that he had long been indebted to defendant, and had failed to pay him; that money could not be collected out of him by legal process; that defendant had endeavored to procure him to work for him, and he would not; that defendant, on the morning before the whipping in the evening, had offered him ten dollars per hour if he would work for him, to be credited on his indebtedness to defendant, and he had refused to do it; and stated to the court, that he proposed to prove, in connection with this evidence, that said witness was a lazy vagabond, who would not work if he could help it. To the introduction of all this evidence, so proposed to go in mitigation, the solicitor objected, and the court sustained the objection; to which ruling defendant excepted.

"No other evidence than the testimony of said Chambless was offered to prove the allegations of the indictment. The defendant then introduced witnesses to impeach the general character of said Chambless; and when the first impeaching witness was put on the stand, defendant asked him this general question, Are you or not acquainted with the general character of said Chambless? To this question the solicitor objected, and the court sustained the objection, and would not allow said question to be asked or answered by the witness; and to this the defendant excepted. The court then announced its decision to be, that the only question which could properly be asked an impeaching witness, and the only one which it would allow, was, Are you acquainted with the

general character of Henry Chambless for truth and veracity? To this ruling of the court the defendant excepted.

"The solicitor then introduced one Wallace as a witness, to sustain the character of said Chambless; and said Wallace swore, on his direct examination, that he was acquainted with the general character of said Chambless in his neighborhood for truth and veracity, and that he would believe him on oath,—that his said character was good, and that he had known him and had resided in his neighborhood for twenty years. On cross-examination, said witness stated, that he was the son-in-law of said Chambless, that he had never heard a single man say anything either for or against his general character for truth and veracity, but that he had heard some of his neighbors say he was a good citizen. The defendant then moved to exclude from the jury all the evidence of said witness brought out on the examination in chief, as to the character of said Chambless; but the court overruled the motion, and the defendant excepted.

The State then introduced one James Buck as a witness, who testified, that he had never known said Chambless, or his character for truth and veracity in Autauga county, but that he had lived by him, for two years, between 1833 and 1838, near Athens, in Dallas county; that he was then acquainted with his general character in that neighborhood for truth and veracity, and that it was good. This witness stated, on cross-examination, that he had never heard any person in that neighborhood say anything about said Chambless, except one McElroy, who said that he was a good neighbor; but that he had never heard anything against him in that neighborhood, while he remained there. The defendant moved to exclude from the jury all the evidence of this witness, touching the general character of Chambless; but the court overruled the motion, and the defendant excepted.

"The defendant insisted before the court and jury, by his counsel, that he could not be convicted in this case, because the proof did not show that an assault and battery had been committed on the person named in the indictment. But the court charged the jury, among other things, that if they believed the evidence of the witness Chambless, they must find the defendant guilty, although they might believe that his

name was spelled Chambless, and not Chambles, because both words conveyed the same sound. To this charge the defendant excepted, and asked the court to charge the jury as follows : That, as there was no evidence that the letters *Chambles*, contained in the indictment as the name of the person alleged to have been assaulted, conveyed or gave the same sound as the letters *Chambless*, being the name of the State's witness, then, if they believed that the name of the person assaulted and beaten was *Chambless*, they must find the defendant not guilty. The court refused to give this charge, and the defendant excepted."

No errors are assigned on the record.

I. W. GARROTT, for the appellant :

1. The certificate of the clerk of the circuit court of Autauga county falls short of the requisition of the statute (Code, § 3613), in several particulars. It does not certify, 1st, to the caption of the grand jury; 2dly, to the endorsements on the indictment; 3dly, to the entries relating to the indictment; 4thly, to the undertakings or recognizances of the defendant; 5thly, to the order of removal; 6thly, that anything contained in the transcript is an order or judgment of the circuit court of Autauga; and, 7thly, that anything contained in said transcript appears on the records of said circuit court of Autauga.

2. The evidence offered in mitigation ought not to have been excluded from the jury. It is conceded that the facts showed no justification of the assault and battery, but they should have been allowed to go to the jury, in order that, in estimating the fine, they might consider the provocation which incited the defendant to the commission of the unlawful act.

3. The ruling of the court, in reference to the question to be propounded to an impeaching witness, was erroneous.—1 Greenleaf on Evidence, § 461, note 3; Hume v. Scott, 3 A. K. Mar. 261; People v. Mather, 4 Wend. 257; State v. Boswell, 2 Dev. L. R. 210; 2 Phillipps on Evidence, 432; State v. Stallings, 2 Hayw. 300; Bakeman v. Rose, 18 Wend. 150; Dave v. The State, 22 Ala. 36; Sorrelle v. Craig, 9 *ib*. 538-40.

4. The witness Buck ought not to have been allowed to

testify to the character of Chambless.  He did not come from the neighborhood of Chambless, and therefore could not speak of the estimate in which his neighbors held him; nor did he know the general character of Chambless, of which (as he testified) he had never heard any one speak.

5.  There was no evidence to show how the name *Chambles*, as spelt in the indictment, was pronounced; but there was evidence to show the proper pronunciation of *Chambless*, the name of the witness.  If it be conceded that the court may take judicial notice of the sound of certain letters constituting a particular word, it certainly cannot do more than give to the letters the sound commonly given to them; it has not the arbitrary right to give them such a sound as may be necessary to make out a case.—Kirk v. Suttle, 6 Ala. 679 (681); 2 Starkie on Evidence, 1588, and note; Turvil v. Aynsworth, 2 Stra. 787; 10 East, 83; Gordon v. Austin, 4 Term R. 326.

M. A. BALDWIN, Attorney General, *contra:*

1. The certificate of the clerk of the circuit court of Autauga, appended to the transcript on which the defendant was tried, is a substantial compliance with the requirements of the statute; and the court to which the trial was removed was bound to presume all things regular up to the order for the change of venue.—The State v. Williams, 3 Stew. 463; The State v. Greenwood, 5 Port. 483.

2. Chambless and Chambles are *idem sonans.*—Gresham v. Walker, 10 Ala. 370; 2 Russell on Crimes, 797.

3. In laying the predicate to impeach a witness, the proper question to be asked is, Are you acquainted with his general character for truth and veracity ?—Sorrelle v. Craig, 9 Ala. 540; Hadjo v. Gooden, 13 *ib.* 718; Nugent v. The State, 18 *ib.* 526;   United States v. Vansickle, 2 McLean, 219; Carter v. Cavenaugh, 1 Iowa R. 171; Frye v. Illinois Bank, 11 Illinois R. 379; Uhl v. Commonwealth, 6 Grattan, 706; Clark v. Bailey, 2 Strob. Eq. 143; Gilbert v. Sheldon, 13 Barb. 623; Bates v. Barber, 4 Cushing's (Mass.) R. 107; Bucklin v. The State, 20 Ohio R. 18; Boswell v. Blackman, 12 Geo. Dec. 590.

4. To acquire a knowledge of a person's general character, it is not necessary to hear any one speak of his disposition to tell the truth; nor is the impeaching witness confined to time

and place as to his knowledge of the character of the impeached witness.—Hadjo v. Gooden, 13 Ala. 722; Dave v. The State, 22 ib. 23; Sleeper v. Vanmiddlesworth, 4 Denio, 431.

STONE, J.—Section 3613 of the Code defines specifically what the transcript shall contain, when a change of venue shall be ordered in a criminal case. The transcript which was certified from the circuit court of Autauga, substantially conforms to the requirements of said section. We do not understand the counsel for the appellant as contending that any thing appears to be omitted in the transcript. The argument is, that neither the transcript nor certificate shows that said proceedings were of record in Autauga circuit court; and that the certificate is itself defective, in failing to mention and verify by name the contents of the transcript, viz., the caption of the grand jury, the indictment, &c.

The section of the Code under consideration defines the duty of the clerk in the given case. If the transcript do not contain copies of all the papers, entries, and orders that are material to the cause, it will, to that extent, be defective. There is nothing in the language of the Code, which requires the clerk to depart from the usual rule, and to mention in his certificate each paper, order, &c., that may be found in the transcript. We think the clerk's certificate substantially meets the requirements of the law. He certifies that "the transcript contains a full, true, and complete transcript of the indictment, and all papers on file in his office, and of all the entries relating to the case of the State against Jefferson Ward, as found in his office." The *entries* could have been none other than the orders of court made in the particular cause; and those orders could only be found, or *exist*, on the records of the court.

These proceedings were had in a court of general jurisdiction; the certificate was given by a sworn officer, and the presumption of law is in favor of their correctness.—Case of Williams, 3 Stew. 454; Greenwood's case, 5 Por. 474; Phil. on Ev., Cow. & Hill's Notes, part 1, p. 296.

2. An argument has been predicated on an alleged variance between the name given in the indictment, and the real name of the person on whom the assault is charged to have been

made. In this connection, the name is matter of description, or identity. The books abound in hair-breadth distinctions; but we apprehend the true rule to be, that if the names may be sounded alike, without doing violence to the power of the letters found in the variant orthography, then the variance is immaterial. Much greater differences than that which appears in the present record, have been held unimportant.—Gresham v. Walker, 10 Ala. R. 370; 2 Russell on Crimes, 715; 2 Taunt. 401.

In the pronunciation of proper names, far greater latitude is indulged than in any other description of words. To hold the pleader to a literal compliance in every case, would greatly obstruct, while it cannot promote, the ends of justice.

A class of cases may be found in the books, where the law requires a stricter conformity of the allegations to the proof. In them, an instrument in writing, or a record, is attempted to be set out. Of this class are the cases collected in Starkie on Evidence, vol. 3, p. 1587, and Gordon v. Austin, 4 Term. But they do not impair the soundness of the rule above enunciated.

3. The testimony offered, as it is said, in mitigation, was properly excluded. It related to a different transaction, and to a conversation at a different time, and was therefore too remote to be given in evidence in this case. To allow this testimony would require the jury to try, not only the guilt or innocence of Ward, but also the habits and solvency of Chambless, and various other questions. Besides, it is by no means certain that the testimony offered would extenuate or mitigate the offence, which the recitals in the bill of exceptions tend to prove.

4. The question raised on the *form* of the preliminary question in the introduction of impeaching testimony is not free from difficulty, whether we consult principle or authority. We acknowledge the force of the argument, that human vices are social in their character, and that one who has blunted his moral sensibilities by crimes, or frauds of scarcely less turpitude, should not receive the same credit in a court of justice as a purely virtuous man. It taxes credulity very far to suppose that veracity can stand unhurt amid the general ruin of moral principle. On this point there is much force in

the language of Ch. J. Collier, in the opinion in Sorrelle v. Craig, 9 A. R. 534. On the other hand, the inquiry may reasonably arise, what degree of immorality shall constitute a basis of impeachment? can any correct scale be laid down? can a safe rule be established?

In the authorities on this point there is an irreconcilable conflict. In my opinion, both the weight and numbers are on the side which confines the investigation to character for truth and veracity. See them collected on the briefs of counsel. Our own court, in the case of Sorrelle v. Craig, *supra*, carefully abstain from adopting the more general form of question, though the writer of the opinion indicates his approval of it. In the case of Nugent, 18 A. R. 321, C. J. Dargan gives the more limited form as the proper question. The question was not directly raised by the record in that case; but in support of the rule thus laid down, the opinion cites several decisions of sister States, settling the question as stated. The question may then be regarded as not authentically settled in this State. A rule of practice that is drawn in question as frequently as this must continue to be, ought to be defined and understood.

The opinion of Senator Tracy, in the case of Bakeman v. Rose, 18 Wend. 146, offers, perhaps, the best reasons in favor of the more general inquiry. The case of U. S. v. Vansickle, 2 McLean, 219, is a forcible argument in favor of the more restricted form of question. While there is much plausibility in the argument of Mr. Tracy, I think he laid down the rule too broadly. To permit a knowledge of the general *moral* character of a witness to be made the grounds of evidence impeaching his credibility, is certainly a wide departure from the wholesome general rule, that witnesses depose to facts, and the jury draws the conclusions.

The question in the restricted form, viz., "From your knowledge of his general character for truth and veracity, would you believe him on oath?" is one of difficult solution to a majority of witnesses. Suppose the question be propounded in the general form, "Are you acquainted with the general *moral* character of the witness who has deposed?" "Is it good or bad?" These questions being answered, suppose the further question be put, viz., "From your knowledge

of his general *moral* character, would you believe him on oath?"   Is not the solution rendered much more difficult?

The proper answer will include, first, the ascertainment of the existence of general bad moral character; secondly, the conclusion or inference from the existence of that *general bad moral character*, that love of truth had been weakened or destroyed thereby; and thirdly, the conclusion or inference from *this*, that the witness sought to be impeached is unworthy of credit on his oath.   And this last remote inference or conclusion is thus given to the jury as a *premise*, from which that body is to draw an inference or conclusion.   This operation of the mind would require a solution of some subtle and debatable questions in casuistry; a solution which ought not to be expected or demanded of witnesses, a majority of whom are unaccustomed to such investigation.

What is bad moral character?   To what immoralities must a witness be addicted, to justify an inference adverse to his veracity?   The general question lays down no rule ; shall a question so important be left to the judgment or caprice of each impeaching witness ?   The standard would be uncertain, dependent on the moral organism of each bystander who might perchance be called to the witness stand.   General dissoluteness might satisfy one mind; professional gambling a second; gross frauds in pecuniary transactions a third; while a fourth might withhold this severe judgment, until the attacked witness had blackened his reputation by crimes of deepest dye.

The difficulties would not end here.   The party whose witness was impeached, would have the clear right, on cross-examination, to learn the grounds of the opinion deposed to. The grounds of the different witnesses might be as multiform as human depravity is; and each separate ground would present an issue for testimony, for argument of counsel, and for deliberation and decision by the jury.   This would be in direct antagonism to that sound principle, which forbids the presentation of outside issues, because they tend to embarrass the deliberations of the jury.

I feel fully authorized, both on principle and authority, to lay down the rule, that inquiries on this subject ought to be limited to the *general character* for *truth* and *veracity*.   This

rule preserves the harmonics of the law on all subjects, where character can become the subject of proof. For instance, in prosecutions imputing personal violence, the accused may prove his general character as a peaceable citizen; in charges of larceny, his general character for honesty, &c.

An argument may be thought to be predicable on the language of the elementary writers. Starkie does not touch the question. Phillipps (vol. 1, old edition, p. 212), as I understand his language, simply lays down the rule, that *general* character can only be proven, in contradistinction to *particular facts*, or *parts* of character. Swift (p. 143) expressly limits the inquiry to general character for *truth*. Greenleaf (vol. 1, § 461) says, a witness may be impeached "by general evidence affecting his credit for *veracity*." The two authors last referred to are in favor of the restricted inquiry. None of the elementary books use the terms good or bad *moral* character, or other equipollent words.

If the question were an open one, the writer of this opinion would be disposed to limit the direct examination of an impeaching witness, first, to his knowledge of the general character for veracity of the impeached witness; and secondly, whether that character was good or bad. Then, let the jury, from this predicate, draw the conclusion whether the witness ought to be believed or not. Of course I would not interdict legitimate cross-examination. But the rule has prevailed too long to be now disturbed, that the witness may be asked whether, from the general character of the impeached witness for truth, he, the impeaching witness, would believe him on oath in a court of justice.

Applying these rules to the case under consideration, it is my opinion, the circuit court did not err in refusing to allow the question presented by the bill of exceptions. The question which the presiding judge prescribed as "the only one he would allow," though a legal question, was not the only one the accused had the right to propound. It was clearly his right to vary the phraseology, or sever the numbers of the sentence, so as to bring the subject home to the comprehension of the witness. Moreover, it was his privilege to extend the inquiry, after ascertaining his witness' knowledge of the general character for truth, so as to learn whether that

character was good or bad, and whether from that general character he would believe him on oath. But a majority of the court is in favor of the more general inquiry.

5. The court below correctly refused to exclude Buck's testimony. If the impeaching or sustaining witness answers the preliminary question affirmatively, it does not destroy his competency though he may never have heard the character of the witness he speaks of canvassed.—Hadjo v. Gooden, 13 Ala. 722; Dave v. The State, 22 Ala. 23.

The judgment of the circuit court. is reversed, and the cause remanded.

RICE, C. J.—We all agree that the judgment of the circuit court should be reversed, and that, in assailing the credit of a witness, an inquiry as to his general character for *truth* is proper. We do not, however, agree upon the question, whether the law *restricts* the inquiry to the general character for *truth*.

My opinion is, that the law makes no such restriction, but allows a broader inquiry into general character. If the most approved writers upon evidence are to be relied on, it is clear that such restriction never formed a part of the English or common law.—1 Phil. on Ev. (ed. of 1820), 212; 2 Phil. on Ev. (ed. of 1839), 768-771; Starkie on Ev. 146; Norris' Peake (6th edition), 107; 1 Greenlf. on Ev. § 461, and notes; Bakeman v. Rose, 18 Wend. R. 146; Sorrelle v. Craig, 9 Ala. R. 534; State v. Boswell, 2 Dev. Rep. 209; The People v. Mather, 4 Wend. R. 257; Anon., 1 Hill's (So. Ca.) R. 251; Hume v. Scott, 3 Marsh. R. 261; Noel v. Dickey, 3 Bibb, 268; Blue v. Kibley, 1 Monroe, 195; Wike v. Lightner, 11. Serg. & Rawle, 199.

I am aware that there are many decided cases in the American courts, which favor the restriction. But there are many American cases opposed to it. The best writers upon evidence are opposed to it. The dictates of natural justice are opposed to it. It is certainly unjust, that a witness who has made no general character as to *truth*, but whose general character is notoriously bad and infamous, should be protected by any such restriction as is now under discussion, and be

thereby enabled to obtain equal credit with a man of unsullied general character.

The authorities herein above cited satisfy me, beyond reasonable doubt, that the cases which decide in favor of the restriction are not to be regarded as law, and ought not to be followed.

WALKER, J.—I concur in the opinion of the Chief Justice.