## BRAMLETT *vs.* THE STATE.

[INDICTMENT FOR MURDER.]

1. *Sufficiency of transcript on change of venue.*—If the defendant, after going to trial without objecting to the sufficiency of the certified transcript on which he is to be tried, afterwards moves in arrest of judgment, because the transcript does not show the organization of the grand jury, by which the indictment was found ; and the court suspends action on the motion, until an amended transcript has been obtained, supplying the deficiency of the first, and then overrules the motion,—there is no error in this of which the prisoner can take advantage. (WALKER and STONE, JJ., holding, that the court had power thus to supply the defects of the transcript ; and RICE, C. J., holding, that the defect was waived by the prisoner.)

2. *Constitutionality of section* 3615 *of the Code.*—Section 3615 of the Code, requiring the accused, after change of venue, to be tried on a certified copy of the indictment, is not violative of any constitutional provision.

3. *Sufficiency of verdict.*—A verdict in these words, "We, the jury, find the defendant guilty of murder in the first degree, *and assess capital punishment,*" having been altered, at the suggestion of the court, so that the last clause read, "*and that he must suffer death,*"—held good and sufficient in either form.

From the Circuit Court of Benton, (now Calhoun.)
Tried before the Hon. WILLIAM M. BROOKS.

The prisoner, Larkin Bramlett, was indicted at the fall term, 1853, of the circuit court of Cherokee, for the murder of Benjamin F. O'Bannon ; was arraigned at the same term, and pleaded not guilty. After several continuances, the cause was removed, on the application of the prisoner, to the circuit court of Benton, now Calhoun county, where a trial was had at the November term, 1857, which resulted in his conviction.

The verdict of the jury, as appears from the bill of exceptions, was in these words: "We, the jury, find the

defendant guilty of murder in the first degree, as charged in the bill of indictment, and *assess capital punishment.*" When this verdict was returned, "the court asked the jury, if they intended by their verdict that the prisoner should suffer death; and suggested that, if such was their verdict, they had better change it, so as to insert the word *death*, instead of *capital punishment.* Thereupon all the jury orally responded, that they had found by their verdict that the prisoner should suffer death; and forthwith struck out the words *capital punishment*, inserted the word *death* in the place thereof, and returned said verdict, so altered, into court. Said verdict was thereupon received by the court, and ordered to be entered of record, [in these words:] 'We, the jury, find the defendant guilty of murder in the first degree, and *that he must suffer death.*' The prisoner objected to this; but the court overruled the objection, and the prisoner excepted."

The certified transcript, sent by the circuit clerk of Cherokee, to the court in which the trial was had, purported to contain "a full, true and complete transcript of all the orders and entries, as stated of record," in the cause, "together with a true copy of the original bill of indictment"; but did not show the organization of the grand jury by which the indictment was found. The record does not show that the prisoner raised any objection, during the progress of the trial, to the sufficiency of the transcript; but the bill of exceptions states that, after conviction, he moved the court "to set aside the verdict, and arrest the judgment, on the following grounds: 1st, that the circuit court of Benton has no jurisdiction of the case; 2d, that no grand jury was summoned, charged and sworn, before and upon the finding of the indictment; 3d, that it does not appear by the record in said cause that any grand jury was ever summoned, charged or sworn, on or before the finding of the indictment; 4th, that the transcript of the record from the circuit court of Cherokee does not contain any caption of the grand jury who found the bill of indictment; 5th, that said transcript of the record is defective; 6th, that there is no bill of indictment, or properly certified copy of an indictment, in this court;

25

7th, that there is no legal evidence to this court that there is any bill of indictment against the prisoner; and, 8th, that the judgment is not authorized by law." On the hearing of the motion, the prisoner produced the certified transcript, containing the defect above named, "which was the only transcript in the court; and thereupon the court refused to pass upon said motion, and suspended its judgment, and ordered that the clerk of the circuit court of Cherokee be ordered to send down to this court a full and complete transcript in said cause; to all of which the prisoner objected, and excepted to the overruling of his objection."

On a subsequent day of the term, "and after the sentence of the court had been passed upon the prisoner," the solicitor produced another certified transcript from the records of the circuit court of Cherokee, showing the organization of the grand jury in that court. "The defendant objected to the same, because it was illegal and irrelevant; because it was no part of the records in this cause; because it was not a paper belonging to this court; because it was not properly on file in this court; and because it was not made out, certified, or filed in this court, until after the trial of said cause, and after said cause was ended; and because the same was not properly certified. The court overruled all these objections; the transcript was read, and the defendant excepted. The court then overruled the motion in arrest of judgment, and the defendant excepted."

Alex. White, and M. J. Turnley, for the prisoner:

1. The verdict entered of record, is the verdict of the court, and not of the jury. The verdict of the jury had been brought into court, and read; and it thereby became a part of the proceedings in the case. If it was sufficient, there was no need to change it; if insufficient, there was no power to change it.

2. The motion in arrest of judgment ought to have been sustained. The court in which the trial was had, derived all its authority to proceed in the case from the certified transcript transmitted to it from the court in which the

Bramlett v. The State.

indictment was found. That transcript was fatally defect-
ive, in not showing the organization of the grand jury by
which the indictment was found. The court in which the
indictment was found, would have no power to try the
prisoner, if its records did not show that the grand jury
was properly empaneled. The court to which the trial is
removed, can only act on the record evidence which the
statute requires. If the certified transcript may omit the
facts showing the organization of the grand jury, and yet
suffice to sustain the jurisdiction of the court; the copy
of the indictment, or the order for a change of venue, may
also be omitted. Nor can this defect be supplied, as was
done in this case, by the production of another certified
transcript subsequently made out. The court has no
authority to act, unless the evidence of its jurisdiction is
before it at the time. To allow the subsequent produc-
tion of another transcript, purporting to correct the defi-
ciencies of the first, would make its jurisdiction depend
upon the accident of its attention being called to its want
of jurisdiction. The jurisdiction of a court cannot rest on
such an *ex post facto* proceeding.

3. Section 3615 of the Code, authorizing the defendant
to be tried "on the certified copy of the indictment," is
unconstitutional. The 10th section of the bill of rights
secures to him "the right to a copy of the indictment."
A copy of the certified copy is not a copy of the original
indictment. Matters of form, in criminal cases, are mat-
ters of substance.

M. A. BALDWIN, Attorney-General, *contra.*—1. A mo-
tion in arrest of judgment, like a demurrer, extends only
to defects apparent on the record. If the grand jury was
not properly organized, the defect was only available by
plea in abatement.—1 Brevard, 169; 2 Stewart, 392, 454;
3 Ala. 378; 5 Ala. 72; 18 Ala. 550; 9 Porter, 370;
Code, § 3591.

2. The transcript furnished by the clerk before the
trial, is correctly certified.—State v. Brister, 26 Ala.
107; Harrell v. State, 26 Ala. 53; Ward v. The State,
28 Ala. 53.

3. The caption of the certified transcript sufficiently shows that the indictment was found by a grand jury properly organized.—Lapsley v. The State, 7 Porter, 527 ; Commonwealth v. James, 1 Pick. 375.

4. If the first transcript was insufficient, the defect was supplied by the one subsequently obtained ; and it was competent for the court, as well after as before conviction, to obtain an amended transcript, "not for the purpose of curing an original defect, but to make the return of the proceedings of another court conformable to what they really were."—1 Chitty's Criminal Law, 336 ; 1 Saunders, 249 ; 3 Modern, 167 ; 2 McCord, 301 ; 4 Texas, 125 ; 1 Brevard, 169 ; 3 Zabr. 49 ; 28 Ala. 9 ; 13 Vermont, 647 ; 18 Vermont, 70.

STONE, J.—We propose, in this case, to decide no question which is not rendered necessary by the state of the record. The true bill against the defendant for murder was found by a grand jury of the county of Cherokee. At the instance of the defendant, the venue was changed to the circuit court of the county then known as Benton, but now named Calhoun. The defendant was arraigned, and pleaded not guilty, long before the change of venue was applied for and obtained. The trial was had in Benton county, on a certified copy of the indictment ; a verdict of guilty rendered, and sentence of death pronounced on the prisoner, which stands suspended to await the action of this court on questions reserved. After the verdict was rendered, and before sentence, the defendant moved in arrest of judgment, on the ground that the transcript from Cherokee did not contain the caption of the grand jury. The court withheld his judgment on said motion, and ordered a perfect transcript to be obtained from the circuit court of Cherokee ; which being obtained, and filed, the motion was overruled.

1. It must be conceded, that when the venue, in a criminal case, has been changed, the defendant may raise the question of the sufficiency of the transcript certified from the court in which the indictment was found. If such transcript does not substantially conform to the require-

ments of section 3613 of the Code, the defendant should not be forced to trial; because there will then be wanting in the court trying the prisoner sufficient record evidence of the jurisdiction of the court.—See Ward v. The State, 28 Ala. 53. We do not say, however, that this transcript *creates* the jurisdiction of the court.

It is certainly the policy of our laws, to discourage and dispense with technicalities, as far as may be consistent with a proper regard to life and liberty. That policy, in its application to grand juries, is expressly declared in sections 3470 and 3471 of the Code. True, those sections do not, in terms, bear on the question we are considering; but they, to some extent, indicate a policy to be pursued by us.

In this case, the record, as it now appears in the transcript, shows that the grand jury was properly organized in Cherokee county; that they found and returned into the court the indictment, on a copy of which the defendant in this case was tried; that by a regular order made in the Cherokee circuit court, at the instance of defendant, the venue was changed to Benton, and the defendant there, without objection, went to trial on the copy of the indictment, so certified from Cherokee. He was convicted, and then, for the first time, raised the question of the sufficiency of the transcript. The only defect pointed out was the omission from it of the caption of the grand jury.

The writer of this opinion thinks the following view is a complete answer to this objection, and Judge Walker concurs in this opinion:

The question presented is, had the circuit court of Benton county legal jurisdiction of this case? We maintain that, when the circuit court of Cherokee county, at the instance of the prisoner, made the order for the change of venue, and adjourned the court, without revoking or qualifying that order, all jurisdiction over the prisoner was out of that court, and the same vested *eo instanti* in the circuit court of Benton county. The jurisdiction was not, and could not be, in abeyance. If this be not so, a prisoner who is out on bail, and who obtains a change

of venue, is amenable to no tribunal, but may go whither-soever he will. The certified transcript required by section 3613 of the Code, does not confer or create the jurisdiction. It is simply the *evidence* of a fact which already exists independently of it.

In saying this, we do not wish to be understood as asserting, that the court to which the venue is changed could rightfully try the prisoner in the absence of all evidence of the charge against him. The court in which the indictment was found had no such authority. The indictment is part of the record, and can exist only in writing. We hold, however, that when the transcript, as in this case, contains all those parts of the record on which questions can be raised *"while the trial is in progress"*—the parts which bear on the question of the guilt or innocence of the prisoner, as contradistinguished from the regular organization of the body by which the grand inquest was held—if in such case, the prisoner go to trial without raising the objection, this mere *evidence* of regularity may be supplied at any time before final judgment in the cause, if the same be done before the adjournment of the term at which the conviction is had. The record being *in fieri*, and under the control of the court during the entire term, its completion at any time before the final adjournment relates back, and heals previous informalities.—Franklin 'v. The State, 28 Ala. 9. See, also, State v. Matthews, 9 Por. 370; State v. Greenwood, 5 *ib.* 474.

Rice, C. J., concurs in the result attained by the majority of the court on this question. The grounds of his opinion are, that by going to trial on the imperfect transcript, without objection, the prisoner waived all right to object in arrest of judgment, on account of the alleged imperfection in the transcript. He thinks, that if, at the time the motion was made in arrest of judgment, there existed, in the imperfection of the transcript then on file, any cause for arresting the judgment, such imperfection could not afterwards be supplied by the production of a more complete record from Cherokee. He cites, in support of his position, Doty v. The State, 6 Blackf. 529; Laforte v. The State, 6 Missouri, 208; Greenwood's case,

5 Por. 474; Matthews' case, 9 Por. 370; Hitt v. Allen, 13 Ill. 592; Gager v. Gordon, 29 Ala. 341; Burnham v. Hatfield, 5 Blackf. 21; Waller v. Logan, 5 B. Monroe, 515; Owens v. Owens, Hardin, 154.

Judge Walker and myself express no opinion on the simple question of waiver; but hold, that if, at the time the motion was made, the imperfection in the transcript was such as to furnish matter for arrest of the judgment, the perfection of the transcript during the term justified the court in overruling the motion.

2. The other objections to this conviction are easily disposed of. Section 3615 of the Code requires a defendant, after change of venue, to be tried on a certified copy of the indictment found against him. This does not in the least impair the right of trial by jury, or trench upon any other principle of the bill of rights.—Ruby v. The State, 7 Missouri, 206.

3. Neither is there any thing in the objection, that the presiding judge directed or permitted a verbal alteration in the verdict of the jury, after it had been read in court. The verdict was good and sufficient, both before and after its alteration. In this case it is not necessary that we should go further.

The judgment of the circuit court is affirmed, and the sentence of the law must be executed.