## John Henry v. The State.

1. Indictment must set out the name of the injured party, if known; but certainty to a common intent suffices in this feature of an indictment. It is sufficient if the party be designated by his Christian and surname, or by a name acquired by reputation; or if the name alleged be *idem sonans* with the true name, though differently spelled, it is sufficient.

2. Idem Sonans. — A stringent rule is not applied on this subject. If, without doing violence to the orthography, the names may be sounded alike, the discrepancy is immaterial.

3. Same — Case Stated. — Indictment for murder charged that the accused made an assault on one Whitman, by shooting the said Whitman, and thereby wounded "him, the said Whiteman," in the breast and face of him, the said Whitman, by giving him, the said Whitman, two mortal wounds, of which the said Whitman instantly died. Defence moved to quash, and in arrest of judgment, because of uncertainty resulting from the discrep-

ancy between Whiteman and Whitman. *Held,* that the allegations of the indictment preclude any uncertainty, and the names are *idem ' sonans* and the same.

4. SAME — ALLEGATA ET PROBATA — CHARGE OF THE COURT. — There was evidence that the deceased was called Whitman by some people and Whiteman by others, and answered to either name. *Held,* not error to instruct the jury that if the deceased was known by the one as well as the other name the difference between them was immaterial.

APPEAL from the District Court of Navarro.    Tried below before the Hon. D. M. PRENDERGAST.

The appellant and the deceased, and all the witnesses to the homicide, were negroes.   A fight, it appears, had been going on between the deceased and one Jim Young, but was about stopped by the intervention of friends, when the appellant, who seems to be a connection of Young, stepped out of a neighboring house, gun in hand, and called out, "Clear the track, G—d d—n it, I'll settle that difficulty." Immediately he levelled, aimed, and fired his gun at the deceased, who, after walking a few steps, fell down and died. The testimony disclosed the utmost deliberation on the part of the appellant.   It seems from the evidence that deceased was usually called Whiteman by the negroes, and Whitman by the white people, but he recognized either name by responding to it when called.   The homicide was committed January 8, 1879, and the trial was had in the following June.   The verdict was murder in the first degree, whereupon judgment of death ensued.   The defence was conducted by appointed counsel, who file in this court a printed brief and argument of marked ability.

*J. H. Rice* and *Rufus Hardy,* for the appellant.

*Thomas Ball,* Assistant Attorney-General, for the State.

WINKLER, J.   The most important questions presented by the record in this case are, *first,* the sufficiency of the indictment; and, *secondly,* the sufficiency of the testimony

adduced on the trial to support the material averments in the indictment.

With regard to the indictment, the name of the person alleged to have been murdered is set out several times. So much thereof as is necessary to present clearly the grounds of objection is here set out. The indictment, after proper formal averments, and giving time and place, proceeds as follows : " Then and there unlawfully, wilfully, feloniously, and of his malice aforethought, in and upon one Alonzo Whitman, in the peace of God and the State then and there being, an assault did make, and that the said John Henry a certain gun then and there loaded and charged with gunpowder and divers leaden shot and bullets, which said gun he, the said John Henry, in both his hands then and there had and held, then and there unlawfully, wilfully, feloniously, and of his malice aforethought did discharge and shoot off, to, against, and upon him, the said Alonzo Whitman, and that the said John Henry, with the leaden shot and bullets aforesaid out of the gun aforesaid then and there, by force of the gunpowder aforesaid, by the said John Henry discharged and shot off as aforesaid, then and there unlawfully, wilfully, feloniously, and of his malice aforethought did strike, penetrate, and wound him, the said Alonzo Whiteman, in and upon the right breast, below the nipple, and in and upon the right side of the face, below the right eye, of him, the said Alonzo Whitman, giving to him, the said Alonzo Whitman, then and there, with the leaden shot and bullets aforesaid so as aforesaid discharged and shot out of the gun aforesaid by the said John Henry, in and upon the right breast, just below the nipple, and upon the right side of the face, below the right eye, of him, the said Alonzo Whitman, two mortal wounds of the depth of six inches and the width of half an inch, of which said two mortal wounds he, the said Alonzo Whitman, then and there instantly died ; and so the grand jurors," etc.

There were some formal and unimportant objections

urged, but the material objection taken to the indictment, both in the motion to quash and in the motion in arrest of judgment, is to the effect that the indictment does not charge with sufficient certainty who was the person charged to have been killed, or what was his name. In other words, it is claimed that it is " doubtful in this : that it charges an assault upon one Alonzo Whitman, and then charges the striking, penetrating, and wounding of one Alonzo Whiteman, and in conclusion charges the death of one Alonzo Whitman as resulting from the assault upon Whitman and the wounding of Whiteman."

By comparing the objection with the indictment, the inaccuracy in stating the objection will be apparent. When the name of the deceased is first mentioned, which is in connection with the assault, he is described in the indictment as *one* Alonzo Whitman, and elsewhere as *the said* Alonzo Whitman, except in one instance, where the name is written " *the said* Alonzo Whiteman ; " and the sole question here presented is, Does this difference of a letter in one instance from the orthography of the name both before and after leave it uncertain as to the name stated in the indictment? If the name is the same wherever it occurs, notwithstanding the difference in the orthography, the objection falls to the ground. Is it all the same, or two different names?

That the law requires the name of the injured party to be set out in every indictment, if known, and that, if unknown, that fact must be stated, is too well settled to admit of controversy. The reason for this rule is that there may be no uncertainty as to what the accused is called on to meet on the trial. It seems, however, that in stating the name of the injured party, whilst the law attaches importance to the fact that the name shall be stated, and correctly stated, yet certainty to a common intent satisfies the demands of the law. It is enough to state a party injured, or any person except the defendant, by their Christian and surnames. Am. Cr. Law, sect. 250. A description of a

person, in legal proceedings, by the name acquired by reputation has been held sufficient. Id., sect. 257. "If the name in the indictment be spelt differently from the real and usual mode of spelling it, but be *idem sonans* with it (and whether it be *idem sonans* seems to be a question left to the jury), it will be sufficient; otherwise not." Archb. Cr. Pr. & Pl. 80. In determining the question of *idem sonans*, the following quotation from the opinion of the court by Stone, J., in *Ward* v. *The State*, 28 Ala. 53, is believed to be applicable to the present inquiry: "The books abound in hair-breadth distinctions, but we apprehend the true rule to be that if the names may be sounded alike without doing violence to the power of the letters found in the variant orthography, then the variance is immaterial."

The following, among many others found in the books, are held to be *idem sonans:* Blackenship and Blankenship, McInins and McGinnis, Edmindson and Edmundson, Deadema and Diadema, Conley and Conolly. In *Gresham* v. *Walker*, 10 Ala. 370, it was said Usrey and Usury were *idem sonans*. "The law does not take notice of orthography; therefore if the name is misspelled no harm to the prosecution can come from this, provided the name as written in the indictment is *idem sonans*, as the books express it, with the true name. It is sometimes a nice matter to determine when the names are of the same sound; and the courts do not in this matter hold the rule of identity with a strict hand." 1 Bishop's Cr. Proc., sect. 688. "If two names are in original derivation the same, and are taken promiscuously in common use, though they differ in sound, there is no variance." 2 Id., sect. 689.

We are of opinion that the name spelled Whitcman at one place in the indictment is the same name, under the the rules of *idem sonans*, as Whitman in other parts of the indictment, and that the court did not err in overruling the motion to quash and in arrest of judgment.

But it is insisted on the part of the appellant that in the name of the deceased there was a fatal variance between that alleged in the indictment and the one proved on the trial, the point of difference being as to whether the name was in fact Whiteman or Whitman.  Under the evidence adduced, the court, at the instance of the county attorney, gave to the jury this instruction: " If the jury believe from the evidence that the person alleged to have been murdered in the indictment was named Alonzo Whitman, or that he was known and answered to that name, then the fact that he was called Alonzo Whiteman would make no difference, nor would it be of any consequence that the name of the party alleged to have been killed was Whiteman, and was spelled Whitman in the indictment."  A charge on the same subject was asked by defendant's counsel, which was given with a qualification to harmonize it with the charge given at the instance of the State.  These charges, taken in connection with each other, were substantially correct in law, and properly submitted to the jury the question as to whether the deceased was known as well by one name as the other; and the jury having determined this issue against the defendant on the proofs adduced, he is in law concluded by the verdict.  *Cotton* v. *The State*, 4 Texas, 260 ; *Owen* v. *The State*, decided at the present term, *ante*, p. 329.

There was a mass of conflicting testimony on the trial, from which it was the peculiar province of the jury to sift out the truth, under appropriate instructions from the court.  All the questions arising upon the evidence were properly submitted under such instructions, and we cannot say that the jury were not warranted in their finding from the testimony.  There being no material error manifested in the proceedings, our duty under the law is to affirm the judgment, and it is so ordered.

*Affirmed.*