# Ashworth *v.* The State.

### *Indictment for Wanton Injury to Stock.*

1. *Indorsement of prosecutor's name on indictment.*—Although the statute declares that, for the unlawful or wanton killing disabling, or injuring certain animals named, "no bill of indictment shall be found, or prosecution maintained, except upon the complaint of the owner of the stock, or his lawful agent" (Code, §§ 4409–10); yet it does not require the record to show affirmatively that the complaint was made by the owner, or by his lawful agent; and an indictment will not be struck from the files, on motion, because the name of the owner is not indorsed on it as prosecutor, although it would be quashed, on motion and proof, if it was preferred without the necessary complaint.

2. *Justification under verbal license; charge as to.*—When the defendant, in a prosecution under this statute, justifies the killing under a verbal license or authority from the owner, and the language relied on as conferring such license is doubtful and ambiguous, it should be left to the jury to determine its meaning; and a charge asked, assuming that the language used conferred such authority, is properly refused.

3. *Value of animal killed, or damage to owner.*—The value of the animal killed or injured, or the amount of the damage to the owner, though material in fixing the amount of the fine, has no bearing on the question of guilt *vel non;* consequently, a charge which instructs the jury that, "if the owner has sustained no damage, they must acquit the defendant," is properly refused.

4. *Tender of compensation.*—When the defendant sets up a tender of compensation before the commencement of the prosecution, as authorized by the statute (§ 4411), he must show an actual tender, or an excuse for not making a tender, which is good and sufficient under the general law of tender, and must bring the money into court. That the owner claimed more than the defendant thought was full compensation, or refused to say what he would accept, is no excuse for not making a tender. It is the defendant's duty to tender a sufficient sum, and, if not accepted, he must determine the amount at his own risk.

FROM the Circuit Court of Perry.

Tried before the Hon. GEO. H. CRAIG.

The indictment in this case charged, in the first count, that

the defendant, William Ashworth, "unlawfully or wantonly killed an ox, of the value of twenty-five dollars, the personal property of James Cook;" and in the second, that he "did unlawfully or wantonly kill, disable, disfigure, destroy, or injure an ox," &c., the property of said Cook. The defendant moved the court to strike the indictment from the files, "because, when said indictment was filed in court, 'No prosecutor' was marked on it." It was admitted, on the hearing of this motion, "that no prosecutor was marked on said indictment when it was filed in court; and that the grand jury had instructed the solicitor to mark the name of James Cook on it as prosecutor, and had refused to find the indictment until said Cook had consented to be marked as prosecutor." The court overruled the motion, and the defendant excepted; and he then pleaded not guilty, on which plea issue was joined.

On the trial, James Cook was introduced as a witness for the State, "and testified in substance as follows: Defendant did shoot and kill an ox, the property of witness, within twelve months before the finding of the indictment, and in said county. The ox was at the time in the field of defendant's father, and had destroyed a large portion of defendant's oat crop, said oats growing in a field surrounded by a fence four or four and a half feet high. Defendant drove the ox three times from the oat field back to witness, with the request that he be kept out of the field; and on the third time the following conversation occurred: Defendant said: 'Mr. Cook, here is your ox again; what do you intend to do with him?' Witness replied: 'I don't intend to do any thing with him.' Defendant then said: 'If you don't do something with him, I will; I do not expect to let him eat any more of my oats.' Witness replied: 'You had better kill him, if you are able to pay for him.' Defendant then said: 'I do not wish to hurt the ox, but I am able to pay for him, and I will kill him if he gets back in my oats.' Witness then said: 'Be certain that you can pay for him, and then kill him and be d—d. I am an easy mule to lead, but a d—d hard one to drive.' Defendant said: 'I can pay for the ox; and if he gets in my oats again, I will kill him, and then pay for him.' The ox again entered the field, and the defendant shot and killed him while trespassing on the oats. Defendant went immediately to the house of witness, and told him that he had killed the ox. Witness took possession of the ox, sold a part as beef, and ate a part with his family; and he had the hide. It was proved, also, by said Cook, that the ox was an inferior work ox; and by other witnesses, that it was a bad jumping animal, and had jumped a twelve-rail fence with a rider. It

was proved that defendant, by his father, told Cook that he would pay whatever the ox was worth before prosecution, and asked what he valued him at; that Cook charged thirty dollars as the value of the ox, which amount defendant refused to pay, but proposed to allow disinterested parties to value the ox, and he would pay such value; but Cook refused to agree to this proposition. Said Cook swore to the jury that the ox was of less value than he had charged defendant, when he (defendant), by his father, proposed to pay for the ox; that no further offer to pay for the ox, or tender of payment, was made. As to the value of the ox, the testimony was conflicting; but the jury trying the case assessed the value at ten dollars, and no witness placed it as high as thirty dollars. It was further proved, also, that the defendant has been willing and able at all times to pay full value for the ox, but had not offered to do so further than as above stated; and that he was an obedient and dutiful son, and an honest, industrious, and obedient boy.

"The testimony above set out being before the jury, the defendant requested the court, in writing, to charge the jury:

"1. If the jury believe, from the evidence, that James Cook has sustained no damage, they must acquit the defendant.

"2. If the jury believe, from the evidence, that James Cook was the owner of the ox killed, and that he told defendant to kill the said ox if he was able to pay for him, and that the defendant did kill him under said direction, then they must acquit the defendant.

"3. If the jury believe, from the evidence, that the defendant was barred from making payment by the refusal of James Cook to name a sum [as] the value of the ox, then . the defendant is excused from tendering payment.

"4. If the defendant, through his father, or otherwise, told Cook that he was willing to pay the full value of the ox, and Cook named an amount above the value, as the lowest he was willing to receive, then this will excuse the defendant from actually taking the money in his hand and offering it to him."

The court refused each of these charges, and the defendant duly excepted to each refusal.

J. H. KING, for the defendant.—1. The indictment should have been struck from the files, on motion made for that purpose. Although the general statute, in reference to. indorsing the prosecutor's name, has been held directory merely; yet this statute goes much further, and prohibits a prosecution, except upon the complaint of the owner, &c.,

and the indictment should show on its face a compliance with the statute. Besides, the proof showed that the grand jury refused to find the bill until Cook consented to be marked as prosecutor, and that the solicitor was instructed to make the necessary indorsement. Until the indorsement was made, the finding was conditional, and had not the force of an indictment; nor could the indorsement be added after the paper had passed out of the hands of the grand jury, and had been filed in court.—See *United States v. Coolidge*, 2 Gall. 367, cited in 53 Ala. 485.

2. The prosecution, though conducted in the name of the State, is a *quasi*-civil proceeding. Its object is not so much to punish the wrongdoer, as to compensate the party damaged, giving him the aid of the criminal law to enforce his claim for indemnity, which, in a strictly civil proceeding, would often be defeated by insolvency and exemptions. If the party complaining has sustained no damage, the prosecution ought to fail.

3. If the defendant was authorized by the owner to kill the ox *damage feasant*, that was a complete defense. *Volenti non fit injuria*. The conversation between the parties, as detailed by Cook himself, showed a verbal license to kill the ox, on making compensation for his value; if it did not even amount to a contract—a proposition made and accepted.

4. In allowing proof of compensation made or tendered, as a defense, it could not have been intended to allow the prosecutor to fix the measure of his own compensation; for that would, in most, if not all cases, defeat the statute. The proof was clear, that the defendant had made every reasonable offer of reparation, and was defeated by the excessive demands of the prosecutor, who should not be allowed the aid of the criminal law to speculate in such a case.

5. The whole statute is unconstitutional. All criminal prosecutions must be instituted and carried on in the name of the State, and by its authority.—Art. VI, § 28. But this prosecution, the statute says, can only be instituted on the complaint of the owner. He is the actor, and his complaint is the only authority for it: without that authority the prosecution is prohibited.

H. C. Tompkins, Attorney-General, for the State.—1. The evidence showed that the prosecution was instituted on the complaint of the owner, and that meets all the requirements of the statute. The failure to indorse the name of the owner as prosecutor does not affect the validity of the indictment, though it might render the foreman of the grand jury liable for the costs of the prosecution.—*The State v. Hughes*, 1 Ala. 655.

2. The value of the animal killed or injured, or the damage to the owner, does not affect the question of the defendant's guilt.  It is only material in assessing the fine.

3. The language used by the prosecutor, in the conversation with the defendant as given in evidence, instead of being a license or authority to kill the ox, was a warning, or implied threat against the act.  At any rate, it was for the jury to determine the meaning of the language used, in view of all the circumstances, and the court properly refused to instruct them as requested.

4. When the statute speaks of payment, or tender of compensation, the terms must be construed with reference to the general law.  The evidence entirely failed to show a legal tender, or a valid excuse for the omission to make such tender.—2 Chitty on Contracts, 1192–94 ; 2 Greenl. Ev. §§ 602, 603.

STONE, J.—It is contended for the accused, that the present indictment is defective, and should have been struck from the file, because the name of the owner of the ox, alleged to have been unlawfully or wantonly killed, was not indorsed on the indictment as prosecutor.  The indictment is framed under section 4410, Code of 1876, which directs that "no bill of indictment shall be found, or prosecution maintained, except upon the complaint of the owner of the stock, or his lawful agent."  The statute in question does not require, in terms, that the record shall show the complaint was made by the owner, or his lawful agent.  Grand jurors are a part of the court, act in the interest of the public, and under a solemn oath ; and we hold it to be our duty to indulge the same presumptions in favor of their correct action, we would indulge in favor of other acts, official and *quasi*-official.  *Rite esse acta*, is the presumption in such cases.—*Brandon v. Snows*, 2 Stew. 255 ; 1 Greenl. Ev. § 20*a* ; 2 Best Pre. Ev. § 353.  The Circuit Court did not err in refusing to strike the indictment from the file.—*Perry Co. v. S. M. & M. R. R.*, 58 Ala. 546.  Should the grand jury disregard this solemn duty, and prefer an indictment when neither the owner of the stock nor his lawful agent made complaint, the court, on motion and proof, would quash the indictment. *Sparrenberger v. The State*, 53 Ala. 481.

2. The conversation between Cook, the owner of the ox, and the accused, when the latter drove the ox to the residence of the former, can not be construed as a license or authority to kill the ox.  The language implies altercation, and some anger.  It rather contains a warning, that, if Ashworth killed the ox, he would be required to pay for it, than

a permission to kill him. If it be thought the remark of Cook gave to defendant authority to shoot and kill the ox, the language is of so ambiguous a character that it should have been left to the jury to say whether or not it conferred the authority. The second of the charges asked was rightly refused, because it claimed an acquittal on the assumed ground that certain words spoken by Cook justified Ashworth's act, when, as we have seen, they were of too doubtful meaning to justify such positive instruction.

3. The charge first asked was also rightly refused. The value of the animal unlawfully or wantonly killed, or the amount of damage done the owner, is not an inquiry on the question of guilt *vel non.* On the question of fixing a minimum fine, it is material.—Code, § 4409.

4. To excuse a defendant, and justify his acquittal, on the ground that full compensation has been paid, or tendered before the commencement of the prosecution (Code of 1876, § 4411), there must be actual payment, or actual tender made, or excuse given for not tendering, which is good and sufficient under the general law of tender; and the money must be brought into court, and so deposited that the owner may obtain it, if the plea of tender be made good. The simple fact that the owner of the property claimed more than the defendant believed was full compensation, is no sufficient excuse for not tendering. Nor is it made the duty of the owner, as matter of law, to make known what sum will satisfy him. Tender would rarely, if ever, become necessary, if parties were agreed on the sum actually due and owing. One who seeks to obtain the advantage which a tender gives, must determine the amount for himself; and he loses all benefit of the tender, even when actually made, if the sum tendered be ascertained to be too little.—Code, § 2987; *Rudulph v. Wagner,* 36 Ala. 698, and citations. Charges 3 and 4 were rightly refused, because neither of them comes up to the rule above declared. Charge number 4 is objectionable on another account. The bill of exceptions contains no evidence that the sum named by Cook, thirty dollars, was "the lowest he was willing to receive." On this account, the charge must be classed as abstract.

The judgment is affirmed.