# Bain *v.* The State.

*Indictment ·for . Murder.*

1. *Right to copy of indictment and list of jury.*—Where a person, indicted for murder, is out on bail, and his counsel make timely application for a copy of the indictment and a· list of the jurors summoned for his trial, one or both (Code, § 4872), such copy and list must be furnished one entire day before the day set for the trial.

2. *Self-defense.*—To make out a case of self-defense under an indictment for murder, "it is necessary that the difficulty should not have been provoked or encouraged by the defendant; that he was at the time so menaced, or appeared to be so menaced, as to create a reasonable apprehension of the loss of his life, or that he would suffer grievous bodily harm; and that there was no other reasonable mode of escape from such present impending peril."

3. *Charge on evidence, invading province of jury.*—"That which rests merely on parol evidence, unless the record affirmatively shows that the fact was conceded, or uncontroverted, can not properly be treated as established fact in charging the jury."

From the Circuit Court of Marshall.

Tried before the Hon. Leroy F. Box.

The indictment in this case charged that the defendant, James Bain, "unlawfully and with malice aforethought killed Bluford Johnson, by shooting him with a pistol." When the case was called for trial, as the bill of exceptions shows, the defendant "objected to being put upon his trial, because the list of jurors ordered to be summoned by the sheriff had not been served on him or his counsel an entire day before the day fixed for his trial;" and he reserved an exception to the overruling of this objection, under the facts stated in the opinion of the court.

[Bain v. The State.]

During the trial, as the bill of exceptions further shows, two witnesses for the State testified, in substance, that the defendant, having a pistol in his hand, came into a gin-house where the deceased was weighing cotton, and ordered him to leave; that the deceased asked " *What for ?*" and started towards him; that the defendant immediately fired his pistol at the deceased, and, in the fight which then ensued, killed him, having shot him several times. On the part of the defendant, several witnesses, relatives of the defendant, testified to previous threats made by the deceased against the defendant, and communicated to the latter; and several witnesses, who were present and saw the difficulty, testified that the deceased, when ordered to leave the gin-house, grasped the defendant by the collar, or shoulder, and struck him; that the defendant was falling when he fired the first shot, and that the other shots were fired while the parties were on the ground, the deceased being on top of the defendant. Four witnesses for the defendant " each testified, that the deceased was a strong, heavy-set, athletic man, about forty-five or fifty years old; that he was lame in one leg, so that he limped perceptibly; and that he was larger and stronger than the defendant." The defendant's father, to whom the gin-house belonged, testified, on behalf of the defendant, " that said gin-house had been sold by him to the deceased some months before the killing, but the sale had been rescinded between them some time prior to the killing, and he had turned the gin-house and the mill over to the defendant." The defendant requested the court, in writing, to charge the jury as follows: " If the jury believe, from the evidence, that the defendant had the right to the actual control of the gin-house, and ordered the deceased to go out; and that the deceased, instead of going out, advanced upon the defendant, and made an attack on him, and took hold of him, and struck him, or attempted to do so; and if, by reason of such attempt, or actual assault, and the superior strength of the deceased, and the precedent threats of the deceased to kill the defendant before sunset of that day, the jury believe [the defendant] had just ground for believing that he was in imminent danger of losing his life, or receiving great bodily harm, and under such belief shot the deceased,—then the defendant had the right to kill the deceased." The court refused this charge, and the defendant excepted to the refusal.

Wyeth & Boyd, for appellant.

H. C. Tompkins, Attorney-General, for the State.

STONE, J.—The defendant was under indictment for murder, but had been enlarged on bail. Soon after the presiding

judge made an order, setting a day for the trial, and directing the sheriff to summon the requisite number of special jurors therefor, counsel for the defendant made an application to the sheriff to be furnished with a list of the jurors thus ordered to be summoned, "an entire day before the day appointed for the trial." The sheriff did furnish defendant's counsel with a list of the jurors summoned, but not one entire day before the day appointed for the trial. The State, through its solicitor, announced ready for trial; but the defendant objected to being put on trial, for the reason above stated. Defendant's objection was overruled, and he reserved an exception to this ruling.

Section 4872 of the Code of 1876 has been the statute law of this State long before and ever since the adoption of the Code of 1852, without verbal alteration, except that under that Code the service was required to be made two entire days before the trial. In all the late compilations, it has been one entire day.—Clay's Digest, 459, § 53; Code of 1852, § 3576; Stone & Shepherd's Code, § 619; Rev. Code, § 4171. The language of that section is not so clear nor complete as is desirable, nor as the magnitude of the subject would seem to demand. The same language is applicable alike to the duty of furnishing to the accused a copy of the indictment, and a list of the jurors summoned for his trial. If there are categories in which the accused has no right to demand a list of the jurors summoned, then to the same extent is he without authoritative right to demand a copy of the indictment preferred against him. The first clause of the section is too clear to admit of questioning construction. If the accused is in actual confinement, "a copy of the indictment, and a list of the jurors summoned for his trial, . . . . *must* be delivered to him, at least one entire day before the day appointed for his trial." To disregard this, would be clearly a reversible error. So, if the accused "is not in actual custody, and has counsel, whose names are so entered on the docket, such counsel must, on application, be furnished with a copy of the indictment, and a list of the jurors." This guarantees the clear right to a copy of the indictment, and a list of the jury. It is silent as to the time they shall be furnished. If they are delivered to counsel, at the very moment the defendant is required to announce whether or not he is ready for trial, is this a compliance with the statute? And if it is not, what length of time must elapse between the service and the trial? But, under a literal construction, there are categories not provided for. Suppose the defendant is out on bail, and yet is unable to employ counsel. Is it the duty of the court to assign him counsel? A literal interpretation of the language of the statute fails to affirm such duty. Suppose, further, he has counsel, but his counsel's name is not so entered on the

docket.   Is a prisoner, in either of these conditions, not entitled to a copy of the indictment, or list of the jury summoned for his trial?   The constitution (Declaration of Rights, § 7) secures to every one, accused of crime, the right " to demand the nature and cause of the accusation, and to have a copy thereof."   Did the framers of this statute intend to withhold this right from persons indicted for murder, yet out on bail, because they had no counsel, or their counsel failed to have their names entered on the docket?   Or did they, in any case, intend to provide that a service at any moment before entering upon the trial would satisfy this constitutional requirement?   Is this constitutional mandate a mere form, which legislation may emasculate, by withholding from its observance all power to benefit the accused in his defense?

In *Parsons v. The State*, 22 Ala. 50, this court, speaking of a statute not distinguishable from the one we are construing, said: " Taking these several provisions together, there can be no doubt as to the object of the last enactment.   The prisoner was to be furnished with the names of the individuals from whom the jury would probably be selected, to afford him the opportunity of ascertaining whether cause for challenge existed ; and also for the purpose of enabling him to exercise understandingly the privileges conferred upon him as to peremptory challenges."—*Bill v. The State*, 29 Ala. 34; *Aaron v. The State*, 39 Ala. 75.   We hold that the proper construction of the statute we are considering is, that when the defendant is not in actual custody, and his counsel make timely application for a copy of the indictment and a list of the jurors, one or both, they must be furnished one entire day before the day set for the trial.   Such, we think, has been the practice of the courts, and we are not willing, by a severe construction, to withhold from parties whose life may be in peril what, we think, the law intended to secure to them, and may be of incalculable service in conducting their defense.

The charge asked was properly refused, for at least two reasons:  *First*, it does not state enough, when construed in reference to the testimony, to show a case of justifiable self-defense. To bring the case within that rule, it was necessary that the difficulty should not have been provoked or encouraged by the defendant; that he was at the time so menaced, or appeared to be so menaced, as to create a reasonable apprehension of the loss of his life, or that he would suffer grievous bodily harm, and that there was no other reasonable mode of escape from such present impending peril.—*Mitchell v. State*, 60 Ala. 26; *Judge v. The State*, 58 Ala. 406 ; *Cross v. The State*, 63 Ala. 40. *Second*, the charge assumes, as facts, that the strength of deceased was superior to that of the accused, and that the deceased had made precedent threats to kill the defendant.   There was testi-

mony tending to show these facts, but its credibility and sufficiency should have been left to the jury. That which rests merely on parol testimony, unless the record shows affirmatively that the fact was conceded, or uncontroverted, can never he treated as established fact, in charging the jury.—*Ashworth v. The State*, 63 Ala. 120; *Henderson v. Marx*, 57 Ala. 169. In all cases not so circumstanced, the credibility and sufficiency of parol testimony must be left to the jury.—1 Brick. Digest, 336, § 8.

For the error in ruling the defendant to trial under the circumstances disclosed, the judgment of the Circuit Court, is reversed, and the cause remanded. Let the defendant remain in custody, until discharged by due course of law.