# Dolan *v.* The State.

## Indictment for Murder.

1. *Color of witness immaterial; duty of jury; reasonable doubt.*—On the trial of a white man for the murder of a negro, all the witnesses for the prosecution being negroes, while the defendant's witnesses were white persons, and reference being made in argument to the question of color, it is not error for the court to instruct the jury, "that it is just as much the duty of a jury to convict a white man of the murder of a negro, as it would be their duty to convict a negro of the murder of a white man, if they believed from the evidence, beyond a reasonable doubt, that he was guilty;" and that it is immaterial whether the witnesses are white or black—that if they believed, beyond a reasonable doubt, that the black witnesses are telling the truth, it as much their duty to convict on their testimony as if the witnesses were white.

2. *Deadly weapon; charges properly refused.*—A charge asked, asserting as matter of law that a gun loaded with small shot is not a deadly weapon, is properly refused, when death in fact ensued from the wound

[Dolan v. The State.]

almost instantly; and a charge which assumes, as matter of fact, that the gun was so loaded, and thereon bases the proposition that it was not a deadly weapon is also properly refused. because it does not submit to the jury the inquiry of fact, dependent on oral testimony, as to the size or character of the shot.

3. *When party threatened may take life.*—It is true that a person, being threatened, is not required to leave his own home, in order to avoid a difficulty ; and it is equally true that when a person is assailed in such manner as to endanger his life, or to expose him to great bodily harm, he being without fault, and having no reasonable mode of escape, may resist, even, if necessary, to the taking of his assailant's life. " But, to come within this rule, the danger must be imminent, impending, present, not prospective, not even in the near future "

4. *Refusal of argumentative charge.*—When a charge asked is not based on any evidence before the jury, but is intended only as an argument, or an aswer to an argument made before them, the court "is not prepared to announce that its refusal is ground of reversal."

5. *What evidence as to character may be given when defendant in criminal case testifies in his own behalf.*—When the defendant, in a criminal case, has testified in his own behalf, the prosecution may adduce evidence as to his general character, but only as affecting his credibility ; as to his character for peacefulness, or the reverse, if not put in issue by himself, the prosecution can not inquire.

FROM the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The defendant below, in this case, Martin Dolan, was indicted for the murder of Robert Winbush, by shooting him with a gun. As disclosed in the bill of exceptions, the evidence showed that the deceased was a tenant of the defendant, and owed him money for rent, which the defendant demanded and the deceased did not pay ; that the deceased had threatened to take defendant's life, and the defendant knew of these threats ; that defendant had loaned deceased a chain ; that the deceased had purchased a chain for himself; that shortly before the killing defendant had gone to the premises of the deceased, demanded rent of the wife of deceased, who was absent, and had taken away with him the chain belonging to deceased. The wife of the deceased testified that at this time defendant made use of abusive language to her, and concerning her husband, and said he would kill her husband when he came for his chain. The wife admitted facts showing bad character before her marriage with deceased. There were three other witnesses for the State who testified, in effect, that deceased having a trace or well chain in his hand, went up to the defendant, who was sitting on the steps of his house, tendered to the defendant the chain in his hand and asked for his own chain ; angry words passed ; defendant called deceased "a black son of a bitch," and deceased retorted by calling defendant " an Irish son of a bitch ; " the deceased then left the place where defendant was sitting, walked around the corner and started up the

street; defendant then stepped in his house, came out again with a gun in his hand, went to the corner, which was only four or five feet from where he had been sitting, and walked a short distance up the street taken by deceased and called to him to stop, which deceased failed to do; defendant raised his gun and snapped a cap; thereupon deceased turned around, asked defendant what he was going to do with the gun, and started toward him in a run, holding his right hand raised, and the chain doubled up in his left hand hanging down by his side; defendant's brother then came out of the house and told the defendant 'not to do that,' the defendant in the mean time being engaged in looking at, or doing some- · thing with, that part of his gun where the trigger is; that when deceased came within a few feet of the defendant, defendant raised his gun and shot deceased in the chest; that deceased fell and within a few minutes died; that defendant then gave his gun to his brother and said he was going down town and give himself up.

The deceased and all the State's witnesses were negroes.

The defense introduced several witnesses whose evidence tended to show that the deceased was a man of violent, turbulent and dangerous character, and was a large man, weighing about one hundred and seventy-five pounds. All of the witnesses for the defense were white men; the only two witnesses as to the facts being the defendant and his brother; the defendant was a small man, being very thin and very short.

The testimony of defendant and his brother was, in effect, that deceased, with a chain in his hand, came to defendant as defendant was sitting on the steps of his own house, and cursed defendant and demanded his chain; defendant stated both chains were defendant's, and that deceased must not curse him, and he wanted him to go away and stay away and make no fuss; that deceased raised the chain in his hand above his head, cursed him and said he had a mind to kill him; that defendant again asked deceased to go away and not to threaten to kill him; that deceased again cursed him and said 'he would go over to Jake Parker's and get his gun and come back and kill defendant,' and then started off in the direction of Jake Parker's. The remaining testimony did not contradict that of the State, except that the defense said deceased turned around and started towards defendant before he snapped the cap. Defendant's brother testified that he (the brother) had loaded the gun some time previous with bird shot—some number 6 and some number 7, and that he did so because he had so many enemies in the neighborhood that he had to protect himself.

[Dolan v. The State.]

In the course of argument the question of the credibility of the witnesses was referred to, and the fact that the defendant was a white man and the deceased and all the State's witnesses were negroes.

Reference was also made to the fact that evidence had been given tending to show the bad character of the deceased, the State's solicitor saying the State was precluded from showing the bad character of the defendant unless the defense attempted to show his reputation for good character, and that the State was ready to show the bad character of the defendant.

In his general charge to the jury, the court, among other things, made the following statements, to each of which the defendant excepted :

1.  Some argument has been made by the attorneys in the cause upon the question of the color.  I charge you that it is just as much the duty of a jury to convict a white man of the murder of a colored man, as it would be the duty of the jury to convict a colored man for the murder of a white man, if you believe from all the evidence beyond a reasonable doubt, that the white man is guilty.

2.  Some argument has been made as to the color of the witnesses ; it is immaterial whether the witnesses were white or black, and if you believe beyond a reasonable doubt that black witnesses are telling the truth, it is as much your duty to convict upon their evidence as though they were white.

3.  No man can claim the protection of self defense if, after the difficulty commenced, he could retreat without danger to himself.

4.  If the defendant went after Winbush (followed him) after Winbush had threatened to go and get his gun, the defendant being willing and ready to meet Winbush and fight him with deadly weapons, and the defendant killed Winbush under these circumstances, it would then be manslaughter in the first degree.

5.  "If the defendant went with the gun under such circumstances as to make Winbush believe, and Winbush did believe he was about to take his, Winbush's, life, and Winbush ran at the defendant to protect his own life, and when Winbush ran at him the defendant shot Winbush, the defendant would be guilty of manslaughter in the first degree.

6.  "If the jury believe from the evidence that when Winbush went around the corner the defendant followed him with the shot gun, being ready and willing to fight, and Winbush believed that the defendant was about to shoot him, and so believing started at the defendant to protect himself,

[Dolan v. The State ]

and the defendant shot at him when he was coming at him, defendant would be guilty of manslaughter in the first degree."

The following charges in writing were then requested by defendant, but the court refused to give them :

7.  The law raises no presumption of malice, in this case, from the use of a deadly weapon, and if the jury believe from the evidence that the defendant shot the deceased without any malice, but under a reasonable apprehension, induced from all the surrounding circumstances of the case, that such shooting was necessary to prevent the execution of a threat by deceased to go and get a gun and return and kill the defendant at the defendant's home, when he had an advantage of defendant, and that defendant fired the shot solely for that purpose, then they must acquit the defendant.

8.  In this case the law raises no presumption of malice from the use of a deadly weapon.

9.  The court charges the jury that as the defendant testified as a witness in his own behalf, the State had the right, if it could, to have proven by lawful evidence that the general reputation of the defendant was bad.

10.  Before the jury should convict the defendant of murder they must believe from the evidence that the defendant killed the deceased with malice ; the law raises no presumption of malice from the use of a deadly weapon in this case.

11.  "The court charges the jury that the law does not require a man upon whom a felonious attack is made, to fly from his assailant, if by such flight he materially adds to the danger of his receiving either immediate injury or injury in the near future.  The law only requires a man to fly from such an assault when he has reason to believe that by so doing he can avoid the danger of the attack."

12, 13, 14, 15 and 16 may be considered as all comprised in charge 16.

16.  "If the jury believe from the evidence that Robert Winbush was a notoriously turbulent and bloodthirsty man, and that during the difficulty spoken of in the evidence, he threatened to go and get his gun and return and kill the defendant, and that, under all the circumstances of the case, the reasonable appearances were that the defendant's life was in imminent danger of his returning and executing his threats, and that the difficulty occurred at the home of the defendant, then the defendant was not under any legal obligations to retreat nor wait until said Winbush obtained an advantage over him, but had a right to stop said Winbush from going after his gun by the use of any means reasonably necessary thereof, and if the jury believe from the evidence

[Dolan v. The State.]

that while the defendant was trying to accomplish this by means reasonably necessary therefor, and without intending to shoot Winbush, the latter attacked him, and the character of the attack was such as to make it necessary for the defendant to kill Winbush to prevent said Winbush from doing him serious bodily harm with a chain that he then had in his hand, then they must acquit the defendant, unless they believe he was in fault in bringing on the difficulty."

The bill of exceptions shows other questions raised on the trial by defendant; but as they are not mentioned in brief of defendant's counsel, nor referred to in the opinion of the court, it is not considered necessary to set them forth.

GREGORY L. SMITH, for appellant.—The court excluded from the consideration of the jury several inferences that might have been drawn from the testimony.—*Humes v. O'Brien,* 74 Ala. 64; *Cary v. State,* 76 Ala. 78; *Sandlin v. Anderson Green & Co.,* 76 Ala. 403; *Hughes v. State,* 75 Ala. 31; *Railroad Co. v. Rosebuck,* 76 Ala. 77; *Rain v. State,* 70 Ala. 8; *Ashworth v. State,* 63 Ala. 124; *Henderson v. Marx,* 57 Ala. 174. The charge given concerning "retreat" was too broad.—*Jones v. State,* 76 Ala. 8; *Cary v. State, supra; Story v. State,* 71 Ala. 337. The law raises no presumption as to malice. *Eiland v. State,* 52 Ala. 322; *Martin v. State,* 47 Ala. 571. Error without injury does not apply to criminal causes. *Mitchell v. State,* 60 Ala. When defendant goes upon the witness stand in his own behalf he subjects himself to impeachment by evidence as to his general character.—*Clark v. State,* 78 Ala. 474. In support of charges asked by defendant, cited *Storey v. State, supra;* Clark's Manual, 380-381 and authorities cited.—*Roberts v. State,* 68 Ala. 166.

T. N. McCLELLAN, Attorney-General, *contra,* cited *Cates v. State,* 50 Ala. 166; 3 Brickell Dig. 221, § 600; *Storey v. State,* 71 Ala. 329; *Eiland v. State,* 52 Ala. 322; *Hughey v. State,* 47 Ala. 97.

STONE, C. J.—The defendant, a white man, was charged and tried for the murder of one Winbush, of African lineage. The trial court, in the general charge to the jury, said: "Some argument has been made by the attorneys in the cause upon the question of color. I charge you that it is just as much the duty of a jury to convict a white man of the murder of a colored man, as it would be the duty of a jury to convict a colored man for the murder of a white man, if you believe from all the evidence, beyond a reasonable doubt, that the white man is guilty."

[Dolan v. The State.]

Charging further, the court said: "Some argument has been made as to the color of the witnesses. It is immaterial whether the witnesses were white or black; and if you believe beyond a reasonable doubt that black witnesses are telling the truth, it is as much your duty to convict on their evidence as though they were white."

There was no error in giving either of these charges.

There was testimony tending to show that the gun with which the fatal injury was inflicted in this case was loaded with small —either squirrel or bird shot. The shot took effect in the chest and felled the deceased, who died almost instantly. It is contended in argument that a gun thus charged is not *per se*, or as matter of law, an instrument calculated to produce death, and hence the law does not presume malice from its use ; that deadly character not being stamped on it as matter of law, it was for the jury to determine, under all the evidence in the cause, whether or not it was a deadly instrument. Several charges were asked, intending, as we suppose, to raise this question. The following is a sample of the charges asked and refused, bearing on this subject : "In this case the law raises no presumption of malice from the use of a deadly weapon." This charge is numbered 8 of those asked for defendant. Charges numbered 7 and 10, each, asserts the same principle. They are faulty, if for no other reason, because each of them assumes as fact that the gun, loaded as it was, was not a deadly weapon, when there was only parol proof tending to show the character of shot with which it was charged. Whatever the number or size of the shot, they did, if the testimony be believed, produce death almost instantly.—*Ex parte Nettles*, 58 Ala. 268. If under any circumstances these charges should be given, they must be so framed as to submit to the jury the inquiry of fact as to the character of shot with which the gun was loaded. —*Ashworth v. State*, 63 Ala. 120 ; *Bain v. State*, 70 Ala. 4; 3 Br. Dig. 114, § 122; *Sandlin v. Anderson*, 76 Ala. 403.

It is very true that one threatened is not required to leave his own home to avoid a difficulty.—*Jones v. State*, 76 Ala. 8; *Storey v. State*, 71 Ala. 385. And it is equally true that one who is assailed in such manner as to endanger his life, or to expose him to grievous bodily harm, who is without fault, and who has no other reasonable mode of escape, may resist, even to the taking of his assailant's life, if necessary to save himself. But, to come within this rule, the danger must be imminent, impending, present. "There must be a present, impending peril to life, or of great bodily harm, either real, or so apparent as to create the *bona fide* belief of an existing necessity."—*Jackson v. State*, 77 Ala. 18 ; *Tesney v. State*,

2

[Dolan v. The State.]

*Ib.* 33 ; *Prior v. State, Ib.* 56 ; *Henderson v. State, Ib.* 77 ; *Ex parte Brown,* 65 Ala. 446 ; *Storey v. State,* 71 Ala. 329 ; *DeArman v. State, Ib.* 351 ; *Jones v. State,* 76 Ala. 8 ; *Ex parte Nettles,* 58 Ala. 268 ; *Pritchett v. State,* 22 Ala. 39. The danger, or apparent danger must be present, not prospective ; not even in the near future. If it be prospective, it may, in most cases, be averted in various ways ; as by taking shelter in one's own dwelling, having the would be assailant arrested, &c. Human life must not be sacrificed under the apprehension of a prospective, probable danger, even in the near future. The city court did not err in refusing the charges numbered respectively 11, 13, 14, 15 and 16. And charge numbered 12 was misleading in this, that it was liable to create the same erroneous impression, as charges 11, 13, 14, 15 and 16 would have created. Such charge should be refused. *Adams v. State,* 52 Ala. 379 ; *Thrash v. Bennitt,* 57 Ala. 156 ; *Brewer v. Watson,* 71 Ala. 299 ; *Hodges v. Coleman,* 76 Ala. 105.

Charge numbered 9, while it may assert a correct proposition of law, manifestly bore no relation to any testimony before the jury, and furnished to that body no guide in passing on testimony before them. It was evidently intended as an argument, or, perhaps, as an answer to an argument, which had been made before the jury. We are not prepared to announce that a refusal to give such charge is ground of reversal.—*Adams v. Thornton,* 78 Ala. 489 ; *Murphy v. The State,* 55 Ala. 252 ; *Hughes v. State,* 75 Ala. 31.

But there is another reason why the charge should not have been given. The defendant had been examined as a witness in his own behalf. The statute secured him this right. The State, prosecuting him, was authorized to inquire into his character—his general character (*Ward v. State,* 28 Ala. 53), but to what end ? Simply for the purpose of attacking his testimony, and showing he was unworthy of belief. General inquiry into his moral character was permissible, but only permissible to the extent it affected his credibility. For any purpose beyond this, the State was not permitted to press the inquiry, unless the defendant had first put his character in issue, by offering testimony that it was good.

The present case was an indictment and trial for murder. The defendant was permitted to prove, and did prove that the deceased was a violent and turbulent man. No proof was made of the defendant's character for peacefulness, or the contrary. None could have been made by the State, unless the defendant had first put his character for peacefulness in issue, by attempting to prove it good. . The record authorizes us to affirm that stress was laid in the defense

[Dolan v. The State.]

on deceased's violent and turbulent character, and many charges were asked on that hypothesis. The State's counsel, in argument, replying to the charge of violence urged against deceased, stated the defendant had not put his own character in issue ; and more than intimated that if he had done so, he, the prosecuting attorney, was prepared with witnesses to prove it bad. We need not inquire whether, in this, counsel went beyond legitimate bounds. It was not objected to, and no question is raised upon it. In reply to this argument and statement by the prosecuting attorney, charge numbered 9, we have a right to infer, was asked by defendant. It was misleading. The jury would have inferred from it, that the whole character of defendant had been laid open to proof, and that it was competent for the State, in the first instance, to make proof attacking his character for peacefulness. We have shown above that only so much of his moral character as reflected on his credibility as a witness was open to assault by the State in the first instance.—*Clark v. State*, 78 Ala. 474. A character for violence or turbulence sheds no light on the credibility of a witness ; and such testimony was not admissible, unless the defendant had first put his character for peace in issue.—Whar. Cr. Ev. § 64 ; *Rex v. Rowton*, Leigh & Cave, 520 ; Roscoe's Cr. Ev. 100, 101 ; 1 Bish. Cr. Proc. §§ 1112, 3. In the case of *Rex v. Rowton*, Cockburn, C. J., said : "What you want to get at is the tendency and disposition of the man's mind towards the committing, or abstaining from committing, the class of crime with which he stands charged."—1 Brick. Dig. 513, § 914 ; 3 Brick. Dig. 227, §§ 684, 5.

It is contended for defendant that in two separate paragraphs of the general charge, each of which was excepted to, the court assumed that the gun with which the killing was done, was a deadly weapon. Now, the use of a deadly weapon, when death ensues, is evidence from which, unexplained, malice may be inferred. Malice is an ingredient of murder, but not of manslaughter. Neither of these paragraphs asserts that a killing under the circumstances postulated would be murder. The assertion is that such killing would be manslaughter. This is not the equivalent of an assertion that the gun, loaded as it was, was a deadly weapon. Nor does either charge or paragraph assert as fact that the gun was a deadly weapon. Each is stated in hypothetical form in all its essential constituent facts, and each fairly left to the jury the ascertainment of the constituent facts. There is nothing in these exceptions.

There is no error in the record.

Affirmed.