# Evans v. The State.

### *Indictment for Murder in Second Degree.*

1. *Jury in criminal case; summoning less than thirty persons; harmless irregularity.*—While it was an irregularity for the court to order twenty-four, instead of thirty, persons to be summoned to serve as petit jurors for a week of the term of the court for which no petit

[Evans v. The State.]

jury had been summoned (Code, §§ 4306, 4316; Sess. Acts 1886-87, p. 151); yet, as the statute (Code, § 4326, Sess. Acts 1886-87, p. 151, § 9) requires only two petit juries to be organized out of the persons summoned and in attendance, where the twenty-four persons so summoned were in attendance, and the court organized them into two juries of twelve men each for the week in which the defendant was tried, the irregularity was not prejudicial to the defendant, and it was not error, of which he can complain, to overrule his motion, based upon said irregularity, to quash the *venire*.

2. *Proof of character.*—A witness to character cannot speak of particular acts, or of the course of conduct of the person inquired about, but is confined to a statement of general reputation in the neighborhood in which he lives.

3. *Conversations between third persons; admissibility of.*—Conversations between third persons, tending to implicate the defendant, but not had in his presence, are not admissible as evidence against him.

4. *Question calling for answer already made.*—The trial court has the discretion to disallow unnecessary questions, calling for answers already explicitly made.

5. *Proof of size of hole made by a bullet; testimony as to experiments made by witness.*—For the purpose of showing the size of a hole made by a bullet shot through a plank, it is not permissible for a witness to testify that he had shot a pistol hole through a plank one time, as an experiment to ascertain the size of the hole made, as compared with the size of the ball which made it.

6. *Exclusion of irresponsive answer to question, though question was not objected to.*—Where the answer to a question is illegal evidence, it is not error to exclude it, on motion of the adverse party, if the answer is not responsive to the question.

7. *Relevancy of evidence to impeach testimony of witness.*—Where, on a trial for homicide, the defendant introduced evidence tending to show that he and his co-defendant went to the house where the killing occured in regard to a mortgage owned by the co-defendant, it was proper to admit in evidence a receipt previously given by the co-defendant in full of the mortgage, as tending to show that the pretense of the co-defendant in going to said house was false.

8. *When refusal to give charge requested need not be considered on appeal.*—Where, on a trial of an indictment for murder, the defendant was convicted of manslaughter, the refusal of the trial court to give a charge requested by him which had reference alone to murder need not be considered on appeal, the conviction of manslaughter being an acquittal of murder.

9. *Homicide in self-defense; defective charge.*—A charge in regard to self-defense that, if deceased presented his gun at defendant's co-defendant in such close proximity as to render retreat hazardous, the co-defendant had the right to use such force as was necessary to free himself from danger, even to the taking of deceased's life, is in-

[Evans v. The State ]

sufficient, in failing to hypothesize, that the defendants were at the time so menaced, or appeared to be so menaced, as to create a reasonable apprehension of the loss of life, or that they would suffer grievous bodily harm, and that there was no other reasonable mode of escape from the impending peril, without increasing their apparent danger.

10. *Conspiritors; liability of each for acts of others.*—If several conspire to do an unlawful act, and a person is killed by one of them in the prosecution of the common object, they are all alike guilty of the homicide, though it was not intended, or within the reasonable contemplation of the parties, as a part of the original design.

11. *Same.*—Where an offense was committed by one of several conspiritors from causes having no connection with the common object, the responsibility for such offense rests solely on the actual perpetrator, though the others were present at the time it was committed.

12. *Same.*—A charge, which hypothesizes a conspiracy to. go to a private house, without any legal excuse therefor, to take a person out of it, in the execution of which purpose the deceased, who was residing at the house, was killed, and concludes with the instruction that, if the killing was not incidental to the purpose of the conspiritors in going there, nor probably in their contemplation in going, and deceased was killed by one of the conspiritors, other than the defendant, of his own malice, then the defendant would not be guilty, was incorrect, because it was predicated upon an hypothesis of an illegal purpose in going to said house.

13. *Punishment of manslaughter; discretion of judge.*—Under the provision of the statute (Code, § 4492), that in all cases of conviction for felonies, in which imprisonment in the penitentiary, or hard labor for the county, is for more than twelve months. and not more than two years. the judge may sentence the party to imprisonment in the penitentiary, or confinement in the county jail, or to hard labor for the county, at his discretion, the judge has the discretion, under a verdict finding the defendant guilty of manslaughter in the first degree, and fixing his punishment at fifteen months in the penitentiary, to sentence the defendant to fifteen months to hard labor for the county.

14. *Sentence to hard labor for county, for costs.*—Where, on a verdict finding the defendant guilty of manslaughter in the first degree, and fixing his punishment at fifteen months in the penitentiary, judgment was rendered that the defendant perform hard labor for the county for fifteen months for the crime, and for and additional term of ten months for the costs, the sentence cannot, on appeal, be declared unauthorized, under the statute (Code, § 4504), where the transcript does not show the amount of costs properly taxable against the defendant; though it is the better practice for the judgment to specify the precise amount of the costs, the number of days the defendant is to serve to pay them, and the sum allowed for each day's service.

[Evans v. The State.]

Appeal from the Circuit Court of Cleburne.

Tried before D. C. Blackwell, Esq., Special Judge.

The appellant, Henry Evans, was jointly indicted with Ben Crawford, for the murder of A. M. Palmer, "*alias* Amasa, *alias* Mace Palmer*.*" The indictment charged murder in the second degree. A severance was had, on the motion of the defendant Evans, and he was put on trial. The testimony for the state tended to show that on the night of the killing of said A. M. Palmer, the defendant, Ben Crawford and Henry Boman went together to the house of Alice Palmer, a daughter-in-law of the deceased; that the deceased, Wright Williamson, and Alice Palmer and her children were in the house at the time; that prior to their going to the house Ben Crawford had, in the presence of the defendant, asked a witness for the State to go with them and have some fun; that upon going to the house, they went into the room where the deceased and Wright Williamson were; that deceased asked, "What business have you here?" to which defendant replied. That upon the deceased saying to them, "Tell your business, or get out," they covered him with their pistols, which they had in their hands, and one of them fired. There was evidence tending to show that the defendant shot his pistol. The evidence for the state further tended to show that the defendant and Ben Crawford, after the pistol was fired, seized Wright Williamson, dragged him out of the house, and told him that they would "mob him before day." There was other evidence that another shot was fired at the deceased, and that a few minutes afterwards the defendant, said Crawford and Boman left. A few minutes after they left, the deceased died from the effects of the wound received from one of the pistol shots. The evidence for the defendant tended to show that he, Ben Crawford and Henry Bowan, did not go to the house of Alice Palmer for any unlawful purpose, that they went there on business, and peaceably; that upon their entering the house, the deceased cursed them, and raised a stick in his hand as if to strike, and that a shot was fired from another room, from which Wright Williamson afterwards came; that the deceased then got a double-barrel shot gun, and, as the defendant, Crawford and Boman were leaving, he pointed the gun at Crawford, and snapped it twice; that, as he tried to shoot the

[Evans v. The State.]

gun a third time, Crawford shot the deceased.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked :   (2) "Unless the jury believe from the evidence that defendant and Crawford and Boman had formed a conspiracy to go to the house of Alice Palmer for the purpose of doing some violence to Wright Williamson or some other person, and that the killing was the natural result of such conspiracy, or that defendant did some act to aid or encourage the killing, and that the killing was done with malice aforethought, the defendant cannot be guilty of the charge of murder."   (25) "If the jury find from the evidence that after defendant, Crawford and Boman went into the house of Alice Palmer a difficulty there arose between them or either of them and old man Palmer, and if they further find that defendant and Crawford in good faith abandoned the conflict and were withdrawing from the house and that old man Palmer pursued them and presented his gun at Crawford in such close proximity as to render retreat hazardous, then Crawford had the right to use such force as was necessary to free himself from the danger, even to the taking of old man Palmer's life, and if you find the killing occurred under such circumstances as these, you should find the defendant not guilty."   (27) "If the defendant neither shot old man Palmer, nor instigated or consented to it, nor knew when it was done, nor did not confer with Crawford nor any one else to do any unlawful act, in the prosecution of which the death of old man Palmer was reasonably in contemplation, and defendant, though present, was not aiding and abetting Crawford to shoot old man Palmer, then the jury must find the defendant not guilty."   (30) "The court charges the jury that if they believe from the evidence that Boman, Crawford and Evans went to the house of Alice Palmer on the night the killing is said to have been done, and an offense was committed by one of them from causes having no connection with the common object for which they went there, the responsibility for such offense rests solely on the actual perpetrator of the crime, and the jury cannot find the defendant guilty simply because he happened to be present at the time the offense was committed."   (31) "If

the jury believe the evidence in this case they must find the defendant not guilty." (35) "If there was a conspiracy to take Wright Williamson out of the Palmer house and the killing of Palmer was not incidental to that common purpose, nor probably in contemplation of the parties, and defendant did not shoot Palmer, but Crawford of his own malice shot and killed Palmer, then the jury must find defendant not guilty." (36) "Before the defendant can be convicted in this case, he himself must have entertained the intent unlawfully to kill old man Palmer, or to do him bodily harm, or he must have known that Crawford entertained such intent, and if defendant did not shoot old man Palmer, and had no intent to injure old man Palmer in any way, and not that Crawford entertained the intent to injure old man Palmer, then the jury must find the defendant not guilty." (39.) "The indictment in this case charges that defendant unlawfully and with malice aforethought, but without premeditation, killed Palmer by shooting him with a pistol, and the court charges the jury that if defendant did not shoot at all on the night of the difficulty, or if Crawford and not defendant, shot and killed old man Palmer, then the defendant cannot be found guilty as charged, unless the State has shown by the evidence beyond a reasonable doubt that defendant himself entertained the intent, unlawfully and with malice aforethought, but without premeditation, to kill old man Palmer, or that Crawford entertained such intent and shot Palmer in pursuance thereof, and that defendant knew that he entertained it and aided or abetted him therein." (45) "The jury are not required to find defendant guilty of murder in the second degree or of manslaughter in the first degree, or of manslaughter in the second degree. They may find him not guilty, and it is their duty to find him not guilty, if under the evidence there is a probability that he did not aid or abet Crawford in the killing." (47) "If the shooting of Palmer was a departure from the common design, and was done by Crawford of his own malice, then the defendant is not guilty." (48) "If Palmer was killed by Crawford, not in furtherance of the common design, or in carrying it out, but of his own malice, then the defendant is not guilty." (54) "The court charges the jury that the positive testimony of any witness who swears he saw an

act is entitled to more weight than the testimony of a witness who testifies negatively that if the act occurred he did not see it." The defendant was convicted of manslaughter in the first degree, and from the judgment of conviction he brings the present appeal.

MERRILL & BRIDGES and R. B. KELLY, for appellant, cited *Kemp v. State*, 89 Ala. 52; *Darby v. State*, 92 Ala. 9; *McQueen v. State*, 94 Ala. 50; *Moulton v. State*, 88 Ala. 116; *Hall v. State*, 51 Ala. 9; *Tolbert v. State*, 87 Ala. 27; *Gibson v. State*, 91 Ala. 64; *Tensey v. State*, 77 Ala. 33; *McColman v. State*, 96 Ala. 108; *Frank v. State*, 27 Ala. 37; *Thompson v. State*, 25 Ala. 41; *Williams v. State*, 81 Ala. 1; 4 Am. & Eng. Ency. of Law, 692; 1 Bishop on Criminal Law, 634; *Zaner v. State*, 90 Ala. 651; *Ex parte Brown*, 16 So. Rep. 602.

WM. C. FITTS, Attorney-General, for the State.

HARALSON, J.—Section 4316 of the Code provides, that if for any cause, no petit jury is summoned for any week of the term of the court, the court may, by an order entered on the minutes, direct the sheriff forthwith to summon the requisite number to serve as petit jurors, etc. Section 4306 provides for the drawing of petit jurors by the officers appointed for the purpose, for each regular term of the court, "allowing thirty persons for each week of the term prescribed by law." Reference is manifestly made in said section 4316, touching "the requisite number to serve as petit jurors," to the provisions of said section 4306. Under the new jury law (Acts 1886-7, p. 151, Code p. 131), section 4, the jury commissioners are required to draw the petit juries for each week of the term, "allowing not more than 36, nor less than 30 persons for each week of the term prescribed by law." It seems that the term of the Circuit Court of said county of Cleburne had been extended by law to three weeks, since the last session of the jury commissioners of said county, the length of the term being two weeks at that time; and no jury having been drawn for the third week, the court, by an order spread on the minutes, directed the sheriff of the county to summon forthwith twenty-four persons to serve as petit jurors during said third week of the term of said court.

2

It appears there is no provision made in said statute of 1886–7 for drawing a petit jury in a case such as we have before us. Section 4316 of the Code, making provision for such a contingency, was not repealed by said later jury law of 1886–7, and it was competent for the court to direct a jury to be summoned under the provisions of said section.—*Kemp v. State*, 89 Ala. 52. But, in requiring this to be done, the court, to avoid an irregularity, should have directed the sheriff to summon thirty, and not twenty-four, persons, as jurors for the week, as directed by said section. Why twenty-four, and not thirty, were ordered summoned, we have no information. Section 4319 of the Code provides, that when a special term is to be held for the trial of unfinished business, thirty persons must be drawn to serve as petit jurors, for each week of the term; and when for the trial of persons charged with a felony, fifty names must be drawn, if the offense may be punished capitally, and if not, twenty-four, to serve as petit jurors. It is not unlikely, the judge treated this as a special term, and was influenced by said section, in ordering twenty-four, instead of thirty persons to be summoned. When the defendant came on to be tried, at said third week of the term of the court, he moved to quash the venire of twenty-four petit jurors for that week, for the reason that the court had ordered twenty-four, and not less than thirty persons, to be summoned, which motion was overruled.

We find in the jury law, prior to said act of 1887, no directions, in terms given, that the judge shall organize more than two juries of twelve men each, for each week. It is provided in section 4326 of the Code that two juries are to be organized out of those drawn and summoned, the first twelve sworn to constitute jury number one, the next twelve, the second jury, and if any more are in attendance, they may be placed on a third jury. In the law of 1887, § 9, it is directed, that out of the persons summoned as a petit jurors, and attending, the court shall organize two petit juries, of twelve men each, and if any are over, they shall be held, unless, in the opinion of the court, they may be excused for the term. So that, under this law, when not more than thirty-six nor less than thirty persons to serve as jurors are directed to be drawn for each week of the term (section 4), the court is not required to organize more than two full

juries, but may excuse any over that number in attendance, if, in its opinion, they are not required for the the term. In the case before us, it appears the court organized two juries of twelve men each for the week in which defendant was tried. He had as many for his trial as if the court had ordered summoned thirty persons, and organized out of them, if in attendance, two full juries, and had excused the others. The defendant, therefore, was not deprived of any right he would have had in the one, more than in the other case. And while there was irregularity in ordering twenty-four, instead of thirty, it does not appear to have been prejudicial to defendant. The provision for drawing more than twenty-four, under the old and new statute, was prompted, we may infer, out of motives of convenience and economy of time, that two full juries might the more readily be obtained, and not out of any supposed rights of defendants in the premises. It most frequently happens that all summoned do not, for some reason or other, always attend, and if more than twenty-four are summoned to begin with, the chances are that the juries may be the more readily secured. There was no error in overruling defendant's motion to quash the venire, of which he can complain.

The witness, Brooks, for the State, swore to the general character of defendant, that it was good, that he had heard that defendant had shot a man in Georgia, and he afterwards heard the report contradicted. The latter part of this statement was admissible as affecting the credibility of the witness. The solicitor was allowed on the re-direct examination, against a proper objection of defendant, to ask the witness: "Do you know the rumor was false?" and he answered, he did not, except from rumor. In this there was error. A witness to character, as we have repeatedly said, cannot speak of particular acts, and his knowledge of them. or even the course of conduct of the person inquired about, but is confined to a statement of general reputation in the neighborhood in which he lives.—*Moulton v. The State*, 88 Ala. 118; *Thompson v. The State*, 100 Ala. 70; *McQueen v. The State*, in MSS; *Lowery v. The State*, 98 Ala. 49.

The witness, Williamson, was shown to have staid all night at Alice Palmer's house, at which the deceased

was killed, the night of the killing. The solicitor was allowed to ask the witness : "At whose instance, if any, did you stay there, that night?" If this question tended to implicate the defendant, it is not shown he was present, when the supposed request was made ; if it did not, it was irrelevant.—*Tolbert v. The State*, 87 Ala. 27; *Hale v. The State*, 52 Ala. 9.

The witness, in addition to stating that he had spent the whole of the night at Alice Palmer's house that night, stated that certain officers of the law came there, about 12 o'clock, and asked for admittance, and when they made known who they were, were admitted, and they arrested the witness. Defendant's counsel asked the witness, where he was when the officers came? The court, on the objection of the solicitor, refused to let him answer the question. In this there was no error. The witness had just answered he was at the house when the officers came, and they arrested him when they entered, and that he had spent the whole night there. The court had the discretion to disallow unnecessary questions, calling for answers already explicitly made. The only object of the question, so far as is seen, was to require a repetition of an answer already made as positively as it could be done. There was no disclosure of any other purpose in propounding the question.

The evidence of the witness Napper,—allowed against defendant's objection,—that he had shot a pistol hole through a dry plank one time, as an experiment to ascertain the size of the hole made, as compared with the size of the ball which made it, as applicable to this case,—is not distinguishable from like experiments denounced as improper and inadmissible in the case of *Tensey v. The State*, 77 Ala. 33, and in the more recent case of *Miller v. The State*, in MSS.

The witness, Owen, for the State, had testified to a conversation had between Crawford, a co-defendant, in the presence of said witness and of the defendant, in the evening of the killing of the deceased, and a short time before, in which Crawford asked witness if he could make a fellow "break over," or "tear out," or "something like that," and that Crawford asked witness to go with him over to the widow's, referring, as was alleged, to Alice Palmer's, where deceased was, for the time, staying. When Crawford came to be examined for the

[Evans v. The State.]

defense, he was asked by defendant about the remarks, and he testified he did not remember them. He was asked by defendant, without objection, to state all that was said by him and Owen that evening, and the character of the conversation, and he replied : "I don't remember all that was said. Jim Owen and I went on with our devilment, talking like we always did." This reply was excluded on motion of the solicitor, and in this there was no error. If the question was legal, the answer was not responsive, and it was in itself illegal evidence. If it had been responsive, and improper, as there was no objection to the question, the party against whom it was offered could not move, after he heard that the answer was against him, to exclude it.—*McCalman v. The State*, 96 Ala. 98.

There was no error in admitting the receipt given by Crawford to Alice Palmer. Crawford had testified, he went the night of the killing, with defendant, to Alice Palmer's house, to see her about a mortgage her husband had given one Howle, on a cow and calf, which he, Crawford, had taken up, but that he had allowed Alice to keep the cow and calf. He further testified, that theretofore, being unable to read and write, he had asked one Robertson to write a receipt to Alice for fifteen dollars against the mortgage, which was done, and he gave it to Alice. Alice testified that Crawford had given her a receipt in full against the mortgage, and the receipt being produced, she swore it was the one given her by Crawford. The receipt showed it was for $15, paid by Alice in full of the Howle mortgage. Crawford had sworn that he did not know whether it was the one he gave Alice or not. There was no error in allowing it to be read. It was sufficiently proved, and tended to show that the pretense of Crawford, in going to her house the night of the killing to see about the cow, was false.

The second charge asked by defendant and refused need not be considered. It had reference alone to murder. The defendant was convicted of voluntary manslaughter, which was an acquittal of murder, for which he cannot again be put on trial.

The twenty-fifth charge was properly refused. It fails to hypothesize, that the defendants were "at the time so menaced, or appeared to be so meanced, as to create a reasonable apprehension of the loss of life, or that (they)

would suffer grievous bodily harm, and that there was no other reasonable mode of escape from such present impending peril," without increasing their apparent danger.—*Bain v. The State*, 70 Ala. 4; *Storey v. The State*, 71 Ala. 337; *Perry v. The State*, 94 Ala. 25; *Wilkins v. The State*, 98 Ala. 6. The language of the charge, that "Palmer presented his gun at Crawford in such close proximity as to render retreat hazardous," falls short of the requirements, in justifying the taking of life.

The twenty-seventh charge was an improper request. In the case of conspirators, to render each responsible for the acts of the others, it is not necessary, in carrying it out, if a party be killed,—the fact as hypothesized in this charge,—that if one of the party did not instigate, aid or abet in any way, to do any unlawful act, in the prosecution of which the death of the party slain was not reasonably within the contemplation of the parties, does not excuse a conspirator from criminal responsibility. Defendant might be guilty, if the party went to the Palmer house for any illegal purpose, although he neither took part in the killing, nor assented to any arrangement beforehand having for its object the death of Palmer. If several conspire to do an unlawful act, and death happens, in the prosecution of the common object, they are all alike guilty of the homicide. Each is responsible for everything done, which follows incidentally in the execution of the common purpose, as one of its probable and natural consequences, even though it was not intended, or within the reasonable contemplation of the parties, as a part of the original design. *Williams v. The State*, 81 Ala. 1; *Gibson v. The State*, 89 Ala. 122; *Martin v. The State*, 89 Ala. 115; *Tanner v. The State*, 92 Ala. 1; *Jolly v. The State*, 94 Ala. 19.

The thirtieth charge was a proper one, and should have been given.

The thirty-fifth charge requested was improper. It hypothesizes a conspiracy to go to a private house, without any legal excuse therefor, to take a party out of it, in the execution of which, Palmer, who was residing for the time with the family in the house, was killed, and concludes with the request, that if his killing was not incidental to their purpose in going there, nor probably in contemplation of the parties in going, and deceased was killed by Crawford of his own malice, and not by defend-

ant, he would not be guilty. The instruction requested
in the charge is predicated upon a wrong basis,—that of
an illegal purpose in going to the house of Alice Palmer.
It could not be correct unless it was predicated upon a
hypothesis of a lawful purpose in going there.

Charge 36 was also improper. It was not necessary
for defendant to have entertained the intent to kill
Palmer or do him bodily harm, to render him guilty un-
der the indictment. If he and others went to the house
with no such intent, but for an unlawful purpose, and
the killing was incidental to such purpose, as one of its
probable and natural consequences, he might still be
guilty.

Charge 39 was properly refused. It excluded by its
terms the guilt of defendant for manslaughter, included
in the indictment, and confines the jury to an acquittal
altogether, if they do not find defendant guilty of mur-
der in the second degree ; and it was also bad for the
same reasons that the one numbered 36 was.

It is a sufficient condemnation of charge 45 that it con-
fined the jury to an investigation simply of a conspiracy,
and instructs them to acquit, if defendant did not aid
Crawford in the killing. There was some evidence,
given by Mrs. Boman especially, tending to show that
defendant may have fired the shot that killed Palmer.
It contains, also, the infirmity of charges 36 and 39.

The same objections to charge 39 are applicable to the
one numbered 47. Besides, it refers to the jury the de-
termination of what was a *departure* from the common
design.

Charge 48 limits the common design, in furtherance
of which the killing took place, to a purpose which in-
cluded the homicide, if necessary in carrying it out,
whereas, the parties may have had an unlawful purpose
in visiting the house, short of a purpose to kill any one,
and yet, if in executing such unlawful purpose, the kill-
ing occurred as incidental to it, and as a probable and
natural consequence of it, the parties might be guilty.

Charges 31 and 54, for the best of reasons, perhaps, are
not insisted on.

For the errors pointed out, the judgment and sentence
of the court below are reversed, and the cause re-
manded.

The verdict of the jury was, "We the ju-

ry find the defendant guilty of manslaughter in the first degree, and fix his punishment at fifteen months in the penitentiary." The court sentenced defendant to fifteen months hard labor for the county of Cleburne for the crime, and to an additional term of ten months hard labor for the county for the costs of the prosecution. Section 3733 of the Code provides, that on a conviction for manslaughter in the first degree, the punishment, at the discretion of the jury, must be in the penitentiary for not less than one nor more than ten years. That section, as we have held, was modified by Section 4492, later enacted, where it is provided, that "in all cases in which the period of imprisonment in the penitentiary, or hard labor for the county, is more than two years, the judge must sentence the party to imprisonment in the penitentiary, and in all cases of conviction for felonies, in which such imprisonment for hard labor is for more than twelve months, and not more than two years, the judge may sentence the party to imprisonment in the penitentiary, or confinement in the county jail, or to hard labor for the county, at his discretion, any other section of the Code to the contrary notwithstanding. And in all cases in which the imprisonment or sentence to hard labor is twelve months, or less, the party must be sentenced to imprisonment in the county jail, or to hard labor for the county." As was said in *Gunter's Case*, 83 Ala. 102, "the law itself thus grades the sentence, and the place and nature of the punishment in all cases, according to the number of years of imprisonment assessed by the jury, where the period is over two years (as in that case), or is twelve months or less. The discretion of the jury, whether in convictions for manslaughter or other offenses, in such cases, has no room to assert itself in controlling or regulating the place or nature of the punishment, as being in the penitentiary or elsewhere. Such discretion is exhausted in fixing the time, or number of years for which the punishment is to continue.—*Zaner v. The State*, 90 Ala. 651; *Henderson v. The State*, 98 Ala. 37; *Ex-parte Brown*, 102 Ala. 179. Under these statutes, then, the judge had the discretion under this verdict,—the imprisonment fixed by the verdict being for more than one and less than two years—to sentence the defendant to fifteen months—the period of imprisonment

[Thomas v. The State.]

fixed by the jury—to hard labor for the county. Then follows Section 4504 of the Code, which provides, ''If on conviction, judgment is rendered against the accused that he perform hard labor for the county, and if the costs are not presently paid, or judgment confessed therefor, as provided by law, then the court may impose additional hard labor for the county for such period, not to exceed eight months, in cases of misdemeanor, and fifteen months in cases of felony, as may be sufficient to pay the costs, at a rate not less than thirty cents *per diem* for each day," etc. Judgment was rendered against the accused in this case, that he perform hard labor for the county for fifteen months for the crime, and to an additional term of ten months for the costs. This sentence was not unauthorized if it did not exceed the amount of the costs properly taxable against defendant. It specified the exact duration, and we presume it was correct. The transcript does not show that the bill of costs includes any for the payment of which the defendant can not be legally imprisoned.—*Croom's Case*, 71 Ala. 14; *Bradley's Case*, 69 Ala. 318. It must be said, however, that while we have sanctioned such judgments, the better practice, as we have heretofore indicated, and which ought to be followed is, that the judgment ought to specify the precise amount of the costs, and the number of days the defendant is to serve to pay them, and the sum allowed for each day's service.—*Walker's Case*, 58 Ala. 395.

Reversed and remanded.