# Murphy *v.* The State.

*Indictment for Resisting Officer in Execution of Legal Process.*

1. *Sufficiency of indictment, in description of officer executing or issuing process.* In an indictment for resisting an officer in the execution of legal process (Rev. Code, § 3580; Form No. 50, p. 813), an averment that the defendant resisted W. C. F., "a constable of said county," in attempting to execute a warrant of arrest "lawfully issued by J. B. F., a justice of the peace in and for said county," is sufficient on demurrer, without an averment that the said W. C. F. "*was at the time* a constable," &c., or that the said J. B. F. "*was at the time* a justice," &c.

2. *Same; alternative averments.*—Since a notary public is, under our constitution, *ex officio* a justice of the peace, and has the same jurisdiction, and since alternative averments in an indictment are authorized by statute (Rev. Code, §§ 4112, 4123-25), the officer by whom the process was issued may be described as "a justice of the peace in and for said county, *or* a notary public of said county."

VOL. LV.

[Murphy v. The State.]

3. *Warrant of arrest; form and sufficiency of.*—A warrant issued by a justice of the peace, stating in its caption the State and county, dated, signed by the justice with the addition of the letters "J. P." to his name, directed "to any constable of said county," and commanding him to arrest and bring before the justice a certain person therein named, "to answer the criminal offense of larceny," is regular on its face (Rev. Code, §§ 3982, 2687), and justifies the constable in executing it.

4. *Same; when not functus officio.*—A warrant of arrest does not become *functus officio*, so soon as the defendant is arrested under it, and brought before the magistrate; if the defendant escapes from custody, he may be pursued by the constable, and re-arrested under the warrant, without any new process.

5. *Argumentative charge.*—An argumentative charge to the jury may be properly refused.

FROM the City Court of Montgomery.

Tried before the Hon. JOHN A. MINNIS.

The indictment in this case charged that, before the finding thereof, "Elias Murphy knowingly and willfully opposed or resisted W. C. Fuller, a constable of the county of Montgomery, in serving, executing, or attempting to serve or execute a certain writ or process, called a warrant of arrest; which said writ or process was lawfully issued by J. B. Fuller, a justice of the peace in and for the said county, or a notary public of said county, commanding the arrest of said Elias Murphy on a criminal charge; against the peace," &c. The defendant demurred to the indictment, on the following grounds: "1st, because it does not charge that the said W. C. Fuller was a constable of the county of Montgomery in the State of Alabama, and does not charge that he was an officer of the State of Alabama, at the time when the offense is said to have been committed by the defendant; 2d, because it does not charge that J. B. Fuller, by whom said warrant is said to have been lawfully issued, was then and there a justice of the peace in and for said county of Montgomery in the State of Alabama; 3d, because it is uncertain from said indictment whether the defendant is charged with resisting a warrant issued by a justice of the peace, or with resisting a warrant issued by some notary public not named; nor does it show that said justice of the peace, or said unnamed notary public, was then and there an officer of this State, and authorized to issue legal process to be served in said county of Montgomery." The court overruled the demurrer, and the defendant then pleaded not guilty.

On the trial, as the bill of exceptions shows, the State introduced said W. C. Fuller and J. B. Fuller as witnesses, with the warrant of arrest, and the affidavit or complaint on which it was founded, which were in these words:

"State of Alabama,     }     Before me, John B. Fuller, a
Montgomery County.     }     justice of the peace in and for said
county, comes John W. Hereford, who, being duly sworn,

[Murphy v. The State.]

says that, within the last sixty days, and in said county, one Elias Murphy did steal, take, and carry away one lot of pumpkins, the personal property of affiant, of the value of less than ten dollars; against the peace and dignity of the State of Alabama.          John W. Hereford.

"Sworn to and subscribed before me, this 5th Dec., 1876.
"John B. Fuller, J. P.

"The State of Alabama, } To any constable of said county:
Montgomery County. } You are hereby commanded to arrest and bring before me the body of Elias Murphy, to answer the criminal offense of larceny. This 5th Dec., 1876.
"John B. Fuller, J. P."

This warrant was indorsed, "Dec. 5, 1876, executed by arresting the defendant, and bringing him into court;" which was signed, *W. C. Fuller*, constable." The said John B. Fuller testified, that he was a justice of the peace in said county, and also a notary public, at the time this warrant was issued; that he issued it as shown on its face, and placed it in the hands of said W. C. Fuller to be executed; that he made no further examination of said Hereford than to swear him to the said complaint, and did not examine or take the deposition of any other witness; that the constable arrested the prisoner under this warrant on the same day, and brought him before said justice in his office, where he wrote the indorsement on the warrant, and laid it on his table. There was no testimony as to what, if any thing, was done in the case by the justice after the prisoner was thus brought before him; but it seems that the prisoner, taking advantage of the constable's absence for a few minutes, walked out of the room, and made his escape. The constable testified, that when he came back into the room, and learned that the prisoner was gone, he mounted his horse, and started in pursuit, and overtook him in a wagon about one mile from the city, and attempted to arrest him again, when the prisoner resisted, and beat him, and took his pistol from him. The constable further testified: "I cannot remember whether or not, when I went to re-arrest him, I took the warant with me under which I had first arrested him, and which I had laid on the table of the justice; rather think I did have it in my pocket, but cannot be certain." C. E. Wilson, another witness for the State, testified: "I was standing at the foot of the stairs leading up from the street to the office of Jno. B. Fuller, when W. C. Fuller came down, and asked me where the prisoner was. I told him that the prisoner had gone down the street. He then asked me where the warrant was, and I answered, 'Up stairs, on the table.' He then went back up stairs, and came down again very soon, with a

paper in his hands. From these facts I think he had the warrant with him when he went to arrest the prisoner."

"This being all the evidence in the case, bearing on the legal questions raised by this bill of exceptions, and the argument having been concluded, the prisoner's counsel asked the court to give the following charges in writing," numbered from one to seven consecutively, "which are hereto attached, and are a part of the record in this case; the presiding judge having marked on each of them ' *Refused, J. A. M.*,' which said initials are meant to stand for the name of the judge. And as the foregoing matters will not otherwise appear of record, the prisoner requests the court to sign and seal this bill of exceptions; which is done accordingly."

The following are the charges so asked and refused:

"1. The law requires that a magistrate. who issues a warrant of arrest, shall state in the warrant the substance of the complaint made before him, on which the warrant is issued. The substance of the complaint, on which the warrant in this case was issued, which the indictment charges that the constable was attempting to execute on the prisoner, is not. stated in the warrant. The constable must be held to know the law, and to have known that said warrant was defective in its frame for this reason. Therefore, said warrant was not a legal process, and the jury must find the defendant not guilty.

"2. The practice of the magistrates of this State is to attach the complaint to the warrant, in lieu of stating the substance of the complaint in the body of the warrant, and to place both the complaint and the warrant in the hands of the officer charged with executing the latter; and the proof shows that this practice was adopted in this case. This made the complaint a part of the warrant, or required the constable to look to the complaint, to determine the legality of the warrant, and showed him that the warrant was not a legal process, and that he had no authority for attempting to serve it on the prisoner. Therefore, the prisoner must be acquitted.

"3. The State must show to the jury, beyond a reasonable doubt, that the prisoner did, knowingly and willfully, resist or oppose an officer of the State in serving, executing, or attempting to serve or execute a legal writ or process; and the complaint offered in evidence in this case shows on its face that the warrant for larceny, issued on it by the justice, was not a legal writ or process; and the defendant cannot be convicted under the indictment in this case, for resisting the constable in attempting to execute it on him.

"4. Under the indictment in this case, the State must

[Murphy v. The State.]

show that the warrant of arrest, the attempted execution whereof the prisoner was charged with resisting, was ' lawfully issued ' by J. B. Fuller, a justice of the peace; and the complaint, on which said warrant is claimed to have been issued, shows on its face that said warrant of arrest was not lawfully issued by said Fuller ; and the defendant cannot be convicted for resisting said constable in attempting to execute it on him.

" 5.    The warrant of arrest, the execution whereof the indictment alleges that the prisoner resisted, shows, by the indorsement on it, that it was executed by said constable on the prisoner, by arresting him thereon, and bringing him into court before the said justice ; and the return of said warrant of arrest by the constable, as aforesaid, rendered said warrant *functus officio* ; and if the jury are not satisfied from the evidence, beyond a reasonable doubt, that the prisoner resisted the execution of said warrant of arrest before it was so executed and returned by said constable, they must acquit the defendant.

" 6.    If the jury believe, from the evidence, that the constable had no other warrant, upon which he attempted to ᐧ arrest the prisoner, after said warrant given in evidence was so returned into court, than the said warrant which had been so returned, they must acquit the defendant.

" 7.    The court of a justice of the peace is a court of inferior jurisdiction, which is conferred and regulated by statute.    In issuing warrants of arrest, he must conform to the material requisitions of the statute.    Section 3978 of the Revised Code requires the magistrate , after an allegation is made before him that a person has been guilty of a designated public offense, to ' examine the complainant and such witnesses as he may propose, on oath, take their depositions in writing, and cause them to be subscribed by the persons making them.'    Section 3979 requires that the depositions must set forth the facts stated by the complainant and his witnesses,tending to establish the commission of the offense, and the guilt of the defendant.    By section 3980, such depositions, and the facts contained in them, constitute the jurisdictional facts, upon which alone the magistrate can determine whether he is reasonably satisfied that an offense has been committed, and whether he has reasonable ground to believe that the defendant is guilty thereof, and whether he has jurisdiction to issue the warrant of arrest.    Penal statutes are strictly construed.    If this examination is not had, and the depositions taken as required by the statute, the justice acquires no jurisdiction to issue the warrant.    The proof in this case shows that no such examination was had

VOL. LV.

[Murphy v. The State.]

by the said justice, and no such deposition was taken by him as the statute requires. Therefore, said justice had no jurisdiction to issue said warrant, and the defendant must be acquitted."

M. J. SAFFOLD, for the prisoner.

JNO. W. A. SANFORD, Attorney-General, for the State.

MANNING, J.—The indictment in this cause is in the form, and has as much particularity in its allegations, as that prescribed by the Code requires. The first and second grounds for demurrer are, therefore, not well taken.

2. The words, "or a notary public of said county," contained in the indictment, is an alternative designation of the office of J. B. Fuller, by whom the warrant was issued. Under our constitution, a notary public is, *ex officio*, a justice of the peace, or exercises "the same jurisdiction" within the scope of his authority; and the description of the officer by whom a warrant was issued, as a justice of the peace, or a notary public, in the alternative, is in harmony with the provisions of the Revised Code on the subject of indictments.— Revised Code, §§ 4112, 4123, 4124, 4125. The demurrer was, therefore, properly overruled.

3–4. The warrant of arrest was sufficient, according to section 3982 of the Revised Code; and it was not *functus officio*, when the defendant escaped, after being brought to the office of the magistrate, or when the constable afterwards was resisted and beaten by defendant during the endeavor to arrest him. Hence, as all the charges asked, numbered 1 to 6, inclusive, were founded on the assumption of one or the other of these propositions, they were properly refused.

5. The remaining instruction asked is objectionable, as being an argument rather than a charge. Its assumptions, also, were in opposition to section 2687 of the Revised Code, which declares : "Whenever it appears that process is regular on its face, and is issued by the competent authority, a sheriff, or other ministerial officer, is justified in the execution of the same, whatever may be the defect in the proceeding on which it was issued."

The judgment must be affirmed.