# Smith v. The State.

## *Indictment for Murder.*

1.    *Objections to venire.*—Objections to the drawing. summoning or organization of the jury in a criminal case, not raised in the court below, are not available on error, unless the irregularity affirmatively appears of record, or consists in the omission from the record of something which ought to be affirmatively shown.

2.    *Shooting at another person than deceased; evidence as to.*—On a prosecution for murder, it having been shown that the fatal shot was fired by defendant while he and a companion were quarrelling with deceased and another man, it is competent for the prosecution to prove that he immediately pursued and shot at the other man; the two acts being parts of one continuous transaction, constituting part of the *res gestæ*, and tending to show the hostile spirit which prompted the shooting.

3.    *Proof of character.*—Character, or reputation, is the estimation in which a person is held in the community in which he lives, and it can not be proved or disproved by evidence of particular acts or conduct; and while a witness, testifying as to character, may take into the account his own estimate of the reputation of the person inquired about, he can not consider any facts of which he may have personal knowledge.

4.    *Abstract charge.*—A charge requested, partly based on facts of which there is no evidence, is properly refused, because abstract.

5.    *Homicide in melee.*—A homicide perpetrated in a *melee*, or promiscuous fight among several persons, is not necessarily reduced below the crime of murder.

6.    *Charges on part of evidence.*—As a general rule, charges asked, instructing the jury that, in making up their verdict, they may consider certain testimony, or certain facts hypothetically stated, should be re-

[Smith v. The State.]

used, (1) because they give undue prominence to the evidence or facts ó stated, and (2) because they are argumentative; but there are exceptions to this general rule, where evidence is offered for a specific purpose only.

7. *Character of deceased for violence.*—On a prosecution for murder, the character of the deceased as a violent and bloodthirsty man may be considered by the jury in determining the degree of the homicide, because against such a man more prompt and decisive measures of defense are justified, and the court should so instruct them on request; but this principle is confined to defensive measures, and furnishes no excuse or palliation for aggressive action.

FROM the Criminal Court of Jefferson.

Tried before the Hon. S. E. GREENE.

The defendant in this case, Henry Smith, was indicted, jointly with Joe Gill, for the murder of J. D. Connelly, by shooting him with a pistol; and being tried separately, was convicted of murder in the first degree, and sentenced to death. No objection was raised in the court below either to the indictment or to the jury, and there was no motion in arrest of judgment. The testimony adduced on the trial, as set out in the bill of exceptions, showed that the homicide occurred on the evening of January 17th, 1888, at the house of one Mary Goodwin, where the deceased and one John Spears were sitting by the fire, when the defendant and Joe Gill came in. Spears testified, on the part of the prosecution, that he shook hands with the defendant and Gill when they came in, but he and Gill soon became involved in a slight altercation, when Gill called out, "Shoot him, Henry;" that the defendant thereupon drew his pistol, but Mary Goodwin rushed in between them; that defendant immediately fired, the ball striking witness in the right hip, and then turned towards the deceased, who threw up his hands, saying, "Don't shoot me, Henry, I have done you no harm, nor said any;" that the defendant then fired again, shooting the deceased in the breast, and a third time as he fell from his chair, striking him in the thigh; that he (witness) immediately ran out of the door, and the defendant shot at him when he had got about thirty yards distant. "The defendant objected to the witness testifying that defendant shot at him after Connelly fell, and while pursuing him outside of the house;" which objection the court overruled, and the defendant excepted. A similar objection was made and overruled to a part of the testimony of Mary Goodwin, and exception was duly reserved. The defendant, testifying in his own behalf, stated that "Spears first advanced upon Gill with a knife, making threatening gestures; that Gill called out, 'Shoot him, Henry, he is going

to kill me,' and he (defendant) immediately fired at Spears, who at once ran out of the door; that as he turned to watch Spears, he discovered the deceased within three or four feet of him, advancing on him with a drawn axe; that he then fired at Connelly, who at once fell; that he then leaped out of the door, fearing an attack from Spears, and remained out a few minutes, then returned to the house, and left in a short time in company with Gill."

The defendant offered in evidence "a showing which had been admitted by the State, subject to legal exceptions," as to the testimony which W. Edwards and others, if present, would give relative to the character ef said Connelly, Spears, and Mary Goodwin. The prosecution objected to the admission of a part of the statement, which was in these words: "That Mary Goodwin is a woman of no chastity, lewd and dissolute; that she kept a house of ill-fame at the time of shooting; that she and Spears were living together at the time of the killing; and that Spears had deserted his family, and had taken up his abode with her." The court sustained the objection, and excluded the evidence; and the defendant excepted.

The defendant requested the following charges in writing, and duly excepted to their refusal: (1.) "If the jury believe from the evidence that there was a general row, fuss, or *melee*, at the house of Mary Goodwin, and that the defendant, the deceased, Gill, Spears, and Mary Goodwin all engaged in mutual combat; they can not convict the defendant of murder in the first degree." (2.) "If the jury believe from the evidence that the deceased was of a violent and bloodthirsty character, they are to take such evidence into consideration in determining the degree of the defendant's guilt, provided they find him guilty."

CARMICHAEL & THACH, for appellant.

WM. L. MARTIN, Attorney-General, for the State.

STONE, C. J.—1. Questions affecting the drawing and summoning of the jury which tried the defendant in this case, have been pressed upon our consideration. No objection was raised on either of these grounds in the trial court, and the record fails to show an error or irregularity in the matters complained of.—Act to expedite the trial of capital cases in Jefferson county, approved February 11, 1889; Sess.

Acts, 324. We can not presume error in the matter of drawing the petit juries for the courts, or for the different weeks of the term, nor that the sheriff failed in diligence in summoning the persons drawn as jurors. Public officers are presumed to act faithfully in the discharge of their official duties, and whoever complains of any irregularity, unless it be the omission of some duty which should, and yet does not appear of record, takes upon himself the burden of proving the irregularity.—*Guesnard v. L. & N. R. R. Co.*, 76 Ala. 452; 3 Brick. Dig. 264, §§ 163, 164, 165; *Phillips v. State*, 68 Ala. 469.

2. According to the testimony for the prosecution, the shooting of Spears and of Connelly, the deceased, grew out of one altercation, and was one continuous transaction. And the pursuit of Spears by defendant, firing at him as he ran, immediately after inflicting the death-wound on Connelly. was not only part of the *res gestæ*, but tended strongly to show the hostile spirit under which he was acting. Speaking on a kindred subject, the General Court (Supreme Court) of Virginia in *Heath's Case*, 1 Robertson, 735, 743, said: "The fact of the shooting, as being a part of the circumstances and of the *res gestæ*, ought not to have been precluded from being given in evidence to the jury, although such evidence might itself have tended to prove a distinct felony committed by the prisoner."—Whart. Cr. Ev. § 31; *Walters v. People*, 6 Parker, C. C. (N. Y.) 15. There was no error in receiving this evidence.

3. There was an admission by the State, that certain witnesses, if present, would give certain testimony. This admission, however, was with the reserved right to object to any part of the testimony that was illegal. Part of the testimony was ruled out, on the objection of the State. There was no error in this. Witnesses can not be impeached by proof of particular acts, as facts, either criminal or immoral. Character, or the estimation in the community in which the witness is held, is a legitimate means of impeaching or sustaining him; and neither on direct nor on cross-examination can the testimony go farther than to ascertain such character or reputation, and the means of knowing it. This excludes all knowledge of facts which the impeaching or sustaining witness may have, with the qualification that, being one of the community, he may take into account his own estimate of the reputation of the witness, who is attempted to be impeached or sustained, but can not consider

[Smith v. The State.]

any facts of which he may have knowledge.—*DeArman v. State*, 71 Ala. 351; *Moulton v. Sta'e*, at present term.

4-5. The first charge hypothesizes that there was a general row at Mary Goodwin's house, and that she participated in it. There is no proof in the record that she took any part, except an attempt to prevent the shooting. This rendered the charge abstract, and required its refusal for that reason, if for no other.—3 Brick. Dig. 113, § 106; *Williams v. Barksdale*, 58 Ala. 288. But it is otherwise faulty. A homicide perpetrated in a row, is not necessarily reduced below the crime of murder.

6-7. Charges are often asked in the following form: That the jury, in making up their verdict, may consider certain testimony, or parts of testimony. Such charges are frequently, if not generally asked, as a species of answer to some point urged in argument. As a general rule, to which there are few exceptions, they should be refused. When the testimony in a cause is made up of several facts or circumstances, all bearing more or less on the question of defendant's guilt, our rulings are, that such charges should be refused, for two reasons: *first*, that their tendency is to give undue prominence to those parts of the testimony on which the ruling is invoked; and, second, that they, at best, are but an argument to the jury.—*Murphy v. State*, 55 Ala. 252; 3 Brick. Dig. 111, 112, §§ 83, 84; *Hussey v. State*, 86 Ala. 34. We have no wish to qualify this general principle. There is, however, a limited, exceptional class of cases, which does not fall within the rule stated, and, therefore, does not fall within the rule. Testimony is sometimes admissible only for a specific purpose; such as, the peaceable character of a defendant, who is accused of a crime involving violence; or, testimony impeaching or sustaining a witness; or, testimony of previous threats, communicated or uncommunicated, made by the person on whom the injury was inflicted; or, testimony proving or disproving the character of the person alleged to have been injured, for turbulence, violence, or blood-thirstiness. In such cases, it is but right that the jury should be told to what extent this exceptional testimony should be weighed by them. In the last two of the cases supposed, if the jury finds the defendant guilty, the character of the deceased for violence or blood-thirstiness may be considered by them in determining the degree of the homicide. This, because in altercations with persons of such character, doubts are more readily indulged, and proper defensive

[Moses v. The State.]

measures may become necessary, than would be permitted between persons of peaceable habit. " On all doubtful questions as to who was the aggressor, the violent or blood-thirsty character of the deceased, if such be his character, enters into the account. More prompt and decisive measures of defense are justified, when the assailant is of known violent and blood-thirsty nature. But this principle is confined to defensive measures." It furnishes no excuse or palliation for aggressive action.—*DeArman v. State*, 71 Ala. 351, 361.

The second charge asked simply declared the proper scope and function of the testimony, as applied to this case, and should have been given, whether asked by the prosecution or the defense. For this error the judgment of the Criminal Court must be reversed.

Reversed and remanded