74 So.2d 728

**Marie McMILLON**

v.

**STATE.**

**1 Div. 684.**

Court of Appeals of Alabama.

Sept. 24, 1954.

Jos. M. Hocklander, Mobile, for appellant.

Si Garrett, Atty. Gen., Arthur Joe Grant, Asst. Atty. Gen., for the State.

692

PRICE, Judge.

Under an indictment charging murder in the first degree, the defendant was convicted of manslaughter in the first degree and was sentenced to the penitentiary for a term of 9 years.

The evidence is undisputed that defendant shot her husband with a pistol on the 20th day of April, 1953, while he was standing in the front yard of their home. Deceased was taken to Mobile City Hospital the day he was shot and remained there until the latter part of June. He was readmitted a week or so later and died in the hospital on July 7, 1953.

Dr. E. B. Wert, a pathologist at the Hospital, did a post mortem examination of the body. He testified there was a complete severance of the spinal cord in the mid-portion of the neck, with scarrings and evidence of injury to the vertebrae in the connecting link between the neck and backbone. There was moderate congestion of the lungs, with pneumonia in the lungs, and kidney infection, paralysis and bed sores.

It was the doctor's opinion that complications due to the severance of the spinal cord was the immediate cause of death. On cross examination he testified the appearance of the body indicated the deceased had not had the best of nursing care during the time he was paralyzed and away from the hospital. He further stated if the bony case housing the spinal cord were shattered very little pressure would sever the cord.

Dr. W. F. Warren testified he examined deceased at the hospital the day he was shot. The bullet was lodged between the last bone in the neck and the first bone in the backbone of the chest. It had knocked loose some small fragments of bone and these fragments are what impinged on the spinal cord. There were no lacerations of the spinal cord but there were severe contusions which would cause paralysis. Deceased was paralyzed from the neck down. There was some feeble movement of the upper muscles of both arms, but not of his hands. He could not move his legs and was able to breathe only with his diaphragm and was unable to feel anything below the level of his little fingers on both hands. He never regained the use of the lower part of his body. He was operated on that afternoon. The witness stated deceased died as a result of the gunshot wound.

On cross examination the witness testified when deceased was released from the hospital the spinal cord was shrunken and scarred from the effects of the bleeding in and around it. The last time he saw deceased before he returned to the hospital the spinal cord was in continuity, in one piece, but the nerve fibers had been so injured that no impulses could go up or down it.

On redirect examination he testified when the spinal cord was exposed at surgery it was swollen and had a considerable amount of bleeding around it, but no actual tears could be seen. It had been compressed by the bone fragments which had in turn been driven in by the bullet. The doctor stated, although he had never seen it happen, in his opinion the bruising and swelling and softening of nerve fibers would possibly make the cord come apart.

It is appellant's contention that the State failed to show a causal connection between the injuries inflicted by defendant and the death of deceased.

■ Under the foregoing evidence, the question as to whether deceased died as a result of the wounds inflicted by defendant was for the jury to determine, and there was no error in the refusal of the affirmative charge on the ground the corpus delicti had not been proven.

■ Defendant having been convicted of manslaughter, the refusal of charge 33,

as well as the other charges relating to murder, was not harmful to her. Garrett v. State, 35 Ala.App. 141, 44 So.2d 260.

The defendant presented evidence to the effect that deceased bore the reputation of being a violent and bloodthirsty man, and she insists the court erred in refusing requested charge number 5.

The refusal of this charge was held to be reversible error in Smith v. State, 88 Ala. 73, 7 So. 52, and this court, on the authority of the Smith case, held the court erred in refusing it in Jacobs v. State, 29 Ala.App. 388, 197 So. 67, and reversed the case solely on its refusal, and certiorari was denied by the Supreme Court, 240 Ala. 58, 197 So. 69.

In the Smith case, supra, the defendant was indicted, tried and convicted of murder in the first degree.

In the Jacobs case, as in the case at bar, the defendant was found guilty of manslaughter in the first degree under an indictment charging murder in the first degree. The defendant sought to justify the killing on the ground of self defense.

 "It has long been the settled law of the state that where the evidence shows that the blow which produced death was with a deadly weapon intentionally aimed at the person slain, the homicide, if not excusable on the ground of self-defense, is either murder or manslaughter in the first degree. The law in respect to manslaughter in the second degree is not applicable in such case. * * *" Smith v. State, 243 Ala. 254, 11 So.2d 471, 472. See also Williams v. State, 251 Ala. 397, 39 So.2d 37.

Since manslaughter in the second degree was not involved in the Jacobs case, nor in this case, and the jury in both cases found the defendant guilty of the lowest degree of homicide possible under the evidence, we fail to see how the refusal of said charge could have been harmful in either case.

Because of the differences pointed out above, it is our view that the doctrine of the Smith case, supra, is not applicable to the case at bar, and the trial court should not be placed in error for refusing charge number 5 on the authority of the Smith case.

We are also of the opinion that the doctrine of the Smith case was not authority for the holding in the Jacobs case and we would overrule the Jacobs case but for the fact that the Supreme Court denied certiorari, and our holdings and decisions are governed by those of the Supreme Court. Title 13, Section 95, Code 1940. Therefore, we conclude that under the authority of the Jacobs case we are bound to hold the trial court committed reversible error in refusing charge number 5.

Other charges refused to defendant were incorrect statements of the law or were covered by the court's oral charge and charges given for defendant.

Reversed and remanded.